Ronald A. Marron (175650)
Alexis M. Wood (270200)
Kas L. Gallucci (288709)
**LAW OFFICES OF RONALD A. MARRON**
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006
Fax: (619) 564-6665
ron@consumersadvocates.com
alexis@consumersadvocates.com
kas@consumersadvocates.com

*[Additional Counsel on Signature Page]*

*Counsel for Plaintiffs and the Proposed Classes*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

ELIZABETH SHOEMAKER, ANDREA
L. ARROYO, BENJAMIN ATWELL,
NICOLE BAEZ, SPENCER
BERGGREN, ANTONIO
BODACOLOFFI JOSEPH BURKA,
BONNIE DAWSON, STACY DUTILL,
ALAINE EGELER, COLLEEN EVOLA,
BRANDY FOSTER, MICHAEL W.
GLIKO IV, CHANTA GRAHAM,
LAUREN GROVER, ALBA P. HARO,
JESUS HERNANDEZ, SALLY TAMI
HERNANDEZ, NICOLE HINDS,
HEATHER HOSFELD, MELISSA
JOHNSON, JONATHAN KELLER,
KEN KNUTSON, BRANDON KRUSE,
CHARLES LAYMAN, JOHNATHAN
LIMBERGER, CARMEN V. LOPEZ,
KIRTI MANDAL, NATALIA MAYA,
PATRICK MELTON, BRIAN MILLS,
TINA MITCHELL, FRANCIS OSORIO,
JENNIFER PADILLA, HELENE

Case No. **'23CV0427 BEN MDD**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**
*Shoemaker et al v. T-Mobile US, Inc. et al*

GAYLE PRY, GREG SETH RESNICK, JEREMY ROBBINS, TERRI RODGERS, JESICA ROSTINE, CINDY SALCEDO, GERRY SCHETTINI, PATRICIA TORRES, JOSEPH VALDEZ, GABRIELLE D. VANN, BRENDAN WILLIAMS, and ISAAC WILSON individually and on behalf of all others similarly situated,

Plaintiffs,

v.

T-MOBILE US, INC. and T-MOBILE USA, INC.,

Defendants

Plaintiffs Elizabeth Shoemaker Andrea L. Arroyo, Benjamin Atwell, Nicole Baez, Spencer Berggren, Antonio Bodacoloffi, Joseph Burka, Bonnie Dawson, Stacy Dutill, Alaina Egeler, Colleen Evola, Brandy Foster, Michael W. Gliko IV, Chanta Graham, Lauren Grover, Alba P. Haro, Jesus Hernandez, Sally Tami Hernandez, Nicole Hinds, Heather Hosfeld, Melissa Johnson, Jonathan Keller, Ken Knutson, Brandon Kruse, Charles Layman, Johnathan Limberger, Carmen V. Lopez, Kirti Mandal, Natalia Maya, Patrick Melton, Brian Mills, Tina Mitchell, Francis Osorio, Jennifer Padilla, Helene Gayle Pry, Greg Seth Resnick, Jeremy Robbins, Terri Rodgers, Jessica Rostine, Cindy Salcedo, Gary Schettini, Patricia Torres, Joseph Valdez, Gabrielle D. Vann, Brendan Williams, and Isaac Wilson, on behalf of themselves and all others similarly situated, assert the following against Defendants T-Mobile US, Inc. and T-Mobile USA, Inc., ("Defendants" or "T-Mobile"), based upon personal knowledge, where applicable, information and belief, and the investigation of counsel.

## **INTRODUCTION**

1.    Plaintiffs' personally identifiable information ("PII") was exfiltrated

and compromised in the data breach announced by T-Mobile on January 19, 2023 (the "Data Breach").

2.     T-Mobile is one of the largest consumer brands in the United States and collects vast quantities of personal information from its customers.

3.     T-Mobile has touted its superior technology to persuade consumers to purchase its services. T-Mobile states that it "is the leader in 5G," offering 5G download speeds, upload speeds, and availability, among other things. T-Mobile's efforts have resulted in wireless coverage that reaches over a hundred million people.

4.     T-Mobile assures its customers that it uses "administrative, technical, contractual, and physical safeguards designed to protect [customers'] data while it is under [T-Mobile's] control."

5.     T-Mobile's CEO insists that "[k]eeping [T-Mobile] customers' data safe is a responsibility we take incredibly seriously" and that preventing data breaches "has always been a top priority of [T-Mobile's]."

6.     T-Mobile's Privacy Policy likewise acknowledges that its consumers "trust T-Mobile to connect [them] to the world every day," that "[a] big part of that is maintaining [their] privacy," and that they "deserve transparency, education, choice, protection, and simplicity."

7.     However, as evidenced by the Data Breach—the latest in a long series of similar breaches—T-Mobile failed to meet these obligations and protect sensitive consumer data.

8.     Plaintiffs bring this Class Action Complaint for T-Mobile's failure to protect their information systems that contain PII and their failure to provide timely and adequate notice to Plaintiffs and other Class Members that their PII had been compromised.

9.     The Data Breach was a direct result of T-Mobile's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect Plaintiffs' and Class Member's PII.

10.    Plaintiffs, individually and on behalf of all others similarly situated,

bring claims for negligence, negligence *per se*, breach of contract, breach of implied contract, unjust enrichment, invasion of privacy – intrusion upon seclusion, the Washington Consumer Protection Act, the California Unfair Competition Law, the California Consumer Legal Remedies Act, the California Consumer Privacy Act, the Connecticut Unfair Trade Practices Act, the Florida Deceptive and Unfair Trade Practices Act, the Georgia Fair Business Practices Act, the Georgia Uniform Deceptive Practices Act, the Illinois Uniform Deceptive Trade Practices Act, the Massachusetts Consumer Protection Act, the Michigan Identity Theft Protection Act, the Michigan Consumer Protection Act, the New York General Business Law, the Ohio Consumer Sales Practices Act, the Ohio Deceptive Trade Practices Act, the Rhode Island Deceptive Trade Practices Act, the Texas Deceptive Trade Practices – Consumer Protection Act, and the Declaratory Judgment Act.

11.     Plaintiffs seek, among other things, damages and injunctive relief requiring T-Mobile to fully and accurately disclose the PII and other information that has been compromised; to adopt reasonably sufficient security practices and safeguards to protect Plaintiffs' and Class Members' PII from unauthorized disclosures in order to prevent incidents like the Data Breach from reoccurring in the future, and to safeguard the PII that remains in T-Mobile's custody.

12.     Plaintiffs further seek an order requiring T-Mobile to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class Members for ten (10) years, as Plaintiffs and Class Members are at risk and will continue to be at an increased risk of identity theft due to the unauthorized disclosure of their PII as a result of T-Mobile's conduct described herein.

13.     Given that little information relating to the Data Breach, including the systems that were impacted, has yet been revealed to the public, Plaintiffs anticipate additional support for their claims will be uncovered following a reasonable opportunity for discovery.

## **JURISDICTION AND VENUE**

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class and Subclass exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative members of the Class and Subclass defined below, and a significant portion of putative Class and Subclass Members are citizens of a different state than Defendants.

15. This Court has specific personal jurisdiction over T-Mobile because the California Plaintiffs' claims arise out of or relate to T-Mobile's contacts with California. T-Mobile has intentionally created extensive contacts with California through its deliberate marketing and sale of its services in the forum.

16. Indeed, most T-Mobile locations (over 1,000) are in California. T-Mobile also has a "Customer Experience Center" in California, designed to allow customers to have "direct personal access" to a "dedicated team of specialists" in California when customers "call or message for assistance." T-Mobile's U.S. CEO explained that "California and the Central Valley have everything [T-Mobile] need[s] to take care of [T-Mobile's] customers" including "amazing energy, a commitment to innovation and business, and most importantly skilled and diverse people."[1]

17. The claims against T-Mobile arise from or relate to forum-related activity because, as a result of California Plaintiffs Shoemaker, Bodacoloffi, Dawson, Egeler, Gliko, Haro, S. Hernandez, Mitchell and Wilson signing up for T-Mobile's services in California, California Plaintiffs and California Subclass members' personal information was compromised in the Data Breach described herein.

18. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), (c), and

---

[1] California's Central Valley Named as Third Location for New T-Mobile Customer Experience, Center, T-MOBILE, (Feb. 11, 2019), https://www.t-mobile.com/news/press/t-mobile-sprint-california-customer-service-center.

(d) because T-Mobile transacts business in this District and a substantial portion of the events giving rise to the claims occurred in this District.

<u>**PARTIES**</u>

**PLAINTIFFS**

      **I.    Plaintiff Shoemaker**

19.    Plaintiff Elizabeth Shoemaker ("Plaintiff Shoemaker") is a citizen and resident of the State of California.

20.    Plaintiff Shoemaker was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

21.    Plaintiff Shoemaker's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

22.    As a result of the Data Breach, Plaintiff Shoemaker spent time and effort researching the Data Breach and reviewing and monitoring her accounts for fraudulent activity.

23.    Plaintiff Shoemaker places significant value in the security of her PII. Plaintiff Shoemaker entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

24.    As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Shoemaker and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Shoemaker and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

25.    As a result of the Data Breach, Plaintiff Shoemaker has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and

is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

## II.     Plaintiff Arroyo

26.     Plaintiff Andrea L. Arroyo ("Plaintiff Arroyo") is a citizen and resident of the State of Connecticut.

27.     Plaintiff Arroyo was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

28.     Plaintiff Arroyo's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

29.     As a result of the Data Breach, Plaintiff Arroyo spent time and effort researching the Data Breach and reviewing and monitoring her accounts for fraudulent activity.

30.     Plaintiff Arroyo places significant value in the security of her PII. Plaintiff Arroyo entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

31.     As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Arroyo and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Arroyo and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

32.     As a result of the Data Breach, Plaintiff Arroyo has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III. Plaintiff Atwell

33.   Plaintiff Benjamin Atwell ("Plaintiff Atwell") is a citizen and resident of the State of Washington.

34.   Plaintiff Atwell was notified by text, email, and/or upon logging into his T-Mobile account of the Data Breach and the impact to his PII.

35.   Plaintiff Atwell's PII was disclosed without his authorization to unknown third parties as a result of the Data Breach.

36.   As a result of the Data Breach, Plaintiff Atwell spent time and effort researching the Data Breach, reviewing and monitoring his accounts for fraudulent activity, and changing his passwords.

37.   Plaintiff Atwell places significant value in the security of his PII. Plaintiff Atwell entrusted his PII to T-Mobile with the understanding that T-Mobile would keep his information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

38.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Atwell and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Atwell and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

39.   As a result of the Data Breach, Plaintiff Atwell has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

### IV. Plaintiff Baez

40.     Plaintiff Nicole Baez ("Plaintiff Baez") is a citizen and resident of the State of New York.

41.     Plaintiff Baez was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

42.     Plaintiff Baez's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

43.     As a result of the Data Breach, Plaintiff Baez spent time and effort researching the Data Breach, reviewing and monitoring her accounts for fraudulent activity, and plans to continue monitoring her credit.

44.     Plaintiff Baez places significant value in the security of her PII. Plaintiff Baez entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

45.     As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Baez and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Baez and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

46.     As a result of the Data Breach, Plaintiff Baez has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**V.     Spencer Berggren**

47.     Plaintiff Spencer Berggren ("Plaintiff Berggren") is a citizen and resident of the State of Florida.

48.     Plaintiff Berggren was notified by text, email, and/or upon logging into their T-Mobile account of the Data Breach and the impact to their PII.

49.     Plaintiff Berggren's PII was disclosed without their authorization to unknown third parties as a result of the Data Breach.

50.     As a result of the Data Breach, Plaintiff Berggren spent time and effort researching the Data Breach, reviewing and monitoring his accounts for fraudulent activity, and has seen an increase in spam emails and telephone calls.

51.     Plaintiff Berggren places significant value in the security of their PII. Plaintiff Berggren entrusted their PII to T-Mobile with the understanding that T-Mobile would keep their information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

52.     As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Berggren and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Berggren and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

53.     As a result of the Data Breach, Plaintiff Berggren has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**VI.     Plaintiff Bodacoloffi**

54.      Plaintiff Antonio Bodacoloffi ("Plaintiff Bodacoloffi") is a citizen and resident of the State of California.

55.     Plaintiff Bodacoloffi was notified by text, email, and/or upon logging into his T-Mobile account of the Data Breach and the impact to his PII.

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

9

56.    Plaintiff Bodacoloffi's PII was disclosed without his authorization to unknown third parties as a result of the Data Breach.

57.    As a result of the Data Breach, Plaintiff Bodacoloffi spent time and effort researching the Data Breach, reviewing and monitoring his accounts for fraudulent activity, and dealing with an increase in spam text messages, emails and telephone calls.

58.    Plaintiff Bodacoloffi places significant value in the security of his PII. Plaintiff Bodacoloffi entrusted his PII to T-Mobile with the understanding that T-Mobile would keep his information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

59.    As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Bodacoloffi and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Bodacoloffi and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

60.    As a result of the Data Breach, Plaintiff Bodacoloffi has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**VII.   Plaintiff Burka**

61.    Plaintiff Joseph Burka ("Plaintiff Burka") is a citizen and resident of the State of New York.

62.    Plaintiff Burka was notified by text, email, and/or upon logging into his T-Mobile account of the Data Breach and the impact to his PII.

63.     Plaintiff Burka's PII was disclosed without his authorization to unknown third parties as a result of the Data Breach.

64.     As a result of the Data Breach, Plaintiff Burka spent time and effort researching the Data Breach, reviewing and monitoring his accounts for fraudulent activity, and is trying to figure out what to do in order to mitigate the impact of the Data Breach.

65.     Plaintiff Burka places significant value in the security of his PII. Plaintiff Burka entrusted his PII to T-Mobile with the understanding that T-Mobile would keep his information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

66.     As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Burka and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Burka and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

67.     As a result of the Data Breach, Plaintiff Burka has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**VIII.  Plaintiff Dawson**

68.      Plaintiff Bonnie Dawson ("Plaintiff Dawson") is a citizen and resident of the State of California.

69.     Plaintiff Dawson was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

11

70.     Plaintiff Dawson's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

71.     As a result of the Data Breach, Plaintiff Dawson spent time and effort researching the Data Breach, reviewing and monitoring her accounts for fraudulent activity, dealing with daily spam calls and phishing attempts, changing passwords on multiple accounts, freezing accounts, and working with capital one to resolve the fallout of two different fraudulent activities.

72.     Plaintiff Dawson places significant value in the security of her PII. Plaintiff Dawson entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

73.     As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Dawson and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Dawson and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

74.     As a result of the Data Breach, Plaintiff Dawson has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

### IV.     Plaintiff Dutill

75.     Plaintiff Stacy Dutill ("Plaintiff Dutill") is a citizen and resident of the State of Maine.

76.     Plaintiff Dutill was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

77.   Plaintiff Dutill's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

78.   As a result of the Data Breach, Plaintiff Dutill spent time and effort researching the Data Breach and reviewing and monitoring her accounts for fraudulent activity.

79.   Plaintiff Dutill places significant value in the security of her PII. Plaintiff Dutill entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

80.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Dutill and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Dutill and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

81.   As a result of the Data Breach, Plaintiff Dutill has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

## X.   Plaintiff Egeler

82.   Plaintiff Alaina Egeler ("Plaintiff Egeler") is a citizen and resident of the State of California.

83.   Plaintiff Egeler was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

84.   Plaintiff Egeler's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

85.     As a result of the Data Breach, Plaintiff Egeler spent time and effort researching the Data Breach, and reviewing and monitoring her accounts for fraudulent activity.

86.     Plaintiff Egeler places significant value in the security of her PII. Plaintiff Egeler entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

87.     As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Egeler and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Egeler and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

88.     As a result of the Data Breach, Plaintiff Egeler has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

## XI.     Plaintiff Evola

89.      Plaintiff Colleen Evola ("Plaintiff Evola") is a citizen and resident of the State of Florida.

90.     Plaintiff Evola was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

91.     Plaintiff Evola's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

92.     As a result of the Data Breach, Plaintiff Evola spent time and effort researching the Data Breach, reviewing and monitoring her accounts for fraudulent

activity, signing up for credit monitoring services, obtaining a new debit card, and calling multiple companies and credit agencies to inform them that she is dealing with identity theft.

93.     As a result of the Data Breach, Plaintiff Evola has experienced identity theft, including someone fraudulently using her debit card, and someone attempting to open a new credit card in her name.

94.     Plaintiff Evola places significant value in the security of her PII. Plaintiff Evola entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

95.     As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Evola and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Evola and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

96.     As a result of the Data Breach, Plaintiff Evola has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**XII.   Plaintiff Foster**

97.     Plaintiff Brandy Foster ("Plaintiff Foster") is a citizen and resident of the State of Texas.

98.     Plaintiff Foster was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

15

99.   Plaintiff Foster's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

100.   As a result of the Data Breach, Plaintiff Foster spent time and effort researching the Data Breach and reviewing and monitoring her accounts for fraudulent activity.

101.   Plaintiff Foster places significant value in the security of her PII. Plaintiff Foster entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

102.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Foster and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Foster and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

103.   As a result of the Data Breach, Plaintiff Foster has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

### XIII.   Plaintiff Gliko

104.   Plaintiff Michael W. Gliko IV ("Plaintiff Gliko") is a citizen and resident of the State of California.

105.   Plaintiff Gliko was notified by text, email, and/or upon logging into his T-Mobile account of the Data Breach and the impact to his PII.

106.   Plaintiff Gliko's PII was disclosed without his authorization to unknown third parties as a result of the Data Breach.

107.   As a result of the Data Breach, Plaintiff Gliko spent time and effort researching the Data Breach, reviewing and monitoring his accounts for fraudulent activity, dealing with an increase in spam telephone calls, putting a freeze on his credit report, and updating or changing most of his passwords due to an attempted identity theft.

108.   Plaintiff Gliko places significant value in the security of his PII. Plaintiff Gliko entrusted his PII to T-Mobile with the understanding that T-Mobile would keep his information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

109.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Gliko and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Gliko and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

110.   As a result of the Data Breach, Plaintiff Gliko has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

### XIV.  **Plaintiff Graham**

111.   Plaintiff Chanta Graham ("Plaintiff Graham") is a citizen and resident of the State of Connecticut.

112.   Plaintiff Graham was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

113.   Plaintiff Graham's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

114. As a result of the Data Breach, Plaintiff Graham spent time and effort researching the Data Breach, reviewing and monitoring her accounts for fraudulent activity, has had to change her passwords, and has seen an increase in phishing and spam phone calls.

115. Plaintiff Graham places significant value in the security of her PII. Plaintiff Graham entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

116. As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Graham and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Graham and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

117. As a result of the Data Breach, Plaintiff Graham has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**XV. Plaintiff Grover**

118. Plaintiff Lauren Grover ("Plaintiff Grover") is a citizen and resident of the State of Rhode Island.

119. Plaintiff Grover was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

120. Plaintiff Grover's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

121.   As a result of the Data Breach, Plaintiff Grover spent time and effort researching the Data Breach, reviewing and monitoring her accounts for fraudulent activity, and dealing with someone opening a bank account using her name.

122.   Plaintiff Grover places significant value in the security of her PII. Plaintiff Grover entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

123.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Grover and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Grover and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

124.   As a result of the Data Breach, Plaintiff Grover has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**XVI.  Plaintiff Haro**

125.    Plaintiff Alba P. Haro ("Plaintiff Haro") is a citizen and resident of the State of California.

126.   Plaintiff Haro was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

127.   Plaintiff Haro's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

128.   As a result of the Data Breach, Plaintiff Haro spent time and effort researching the Data Breach, reviewing and monitoring her accounts for fraudulent

activity, as well as dealing with an increase in spam telephone calls and an attempted identity theft.

129.   Plaintiff Haro places significant value in the security of her PII. Plaintiff Haro entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

130.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Haro and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Haro and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

131.   As a result of the Data Breach, Plaintiff Haro has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**XVII. Plaintiff J. Hernandez**

132.   Plaintiff Jesus Hernandez ("Plaintiff J. Hernandez") is a citizen and resident of the State of Texas.

133.   Plaintiff J. Hernandez was notified by text, email, and/or upon logging into his T-Mobile account of the Data Breach and the impact to her PII.

134.   Plaintiff J. Hernandez's PII was disclosed without his authorization to unknown third parties as a result of the Data Breach.

135.   As a result of the Data Breach, Plaintiff J. Hernandez spent time and effort researching the Data Breach, reviewing and monitoring his accounts for

fraudulent activity, dealing with an increase in spam and phishing text messages and telephone calls.

136.    Plaintiff J. Hernandez places significant value in the security of his PII. Plaintiff J. Hernandez entrusted his PII to T-Mobile with the understanding that T-Mobile would keep his information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

137.    As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff J. Hernandez and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff J. Hernandez and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

138.    As a result of the Data Breach, Plaintiff J. Hernandez has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

## XVIII.        Plaintiff S. Hernandez

139.    Plaintiff Sally Tami Hernandez ("Plaintiff S. Hernandez") is a citizen and resident of the State of California.

140.    Plaintiff S. Hernandez was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

141.    Plaintiff S. Hernandez's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

142.    As a result of the Data Breach, Plaintiff S. Hernandez spent time and effort researching the Data Breach and reviewing and monitoring her accounts for fraudulent activity.

143. Plaintiff S. Hernandez places significant value in the security of her PII. Plaintiff S. Hernandez entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

144. As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff S. Hernandez and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff S. Hernandez and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

145. As a result of the Data Breach, Plaintiff S. Hernandez has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**XIX. Plaintiff Hinds**

146. Plaintiff Nicole Hinds ("Plaintiff Hinds") is a citizen and resident of the State of New York.

147. Plaintiff Hinds was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

148. Plaintiff Hinds's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

149. As a result of the Data Breach, Plaintiff Hinds spent time and effort researching the Data Breach, reviewing and monitoring her accounts for fraudulent activity, and dealing with an increase in spam telephone calls.

150. Plaintiff Hinds places significant value in the security of her PII. Plaintiff Hinds entrusted her PII to T-Mobile with the understanding that T-Mobile

would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

151.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Hinds and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Hinds and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

152.   As a result of the Data Breach, Plaintiff Hinds has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**XX.   Plaintiff Hosfeld**

153.   Plaintiff Heather Hosfeld ("Plaintiff Hosfeld") is a citizen and resident of the State of Florida.

154.   Plaintiff Hosfeld was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

155.   Plaintiff Hosfeld's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

156.   As a result of the Data Breach, Plaintiff Hosfeld spent time and effort researching the Data Breach, reviewing and monitoring her accounts for fraudulent activity, changing  her passwords, receiving emailed phishing attempts, and dealing with notifications of someone trying to access her account.

157.   Plaintiff Hosfeld places significant value in the security of her PII. Plaintiff Hosfeld entrusted her PII to T-Mobile with the understanding that T-Mobile

would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

158.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Hosfeld and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Hosfeld and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

159.   As a result of the Data Breach, Plaintiff Hosfeld has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

## XXI. **Plaintiff Johnson**

160.   Plaintiff Melissa Johnson ("Plaintiff Johnson") is a citizen and resident of the State of Georgia.

161.   Plaintiff Johnson was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

162.   Plaintiff Johnson's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

163.   As a result of the Data Breach, Plaintiff Johnson spent time and effort researching the Data Breach, reviewing and monitoring her accounts for fraudulent activity, dealing with an increase in phishing and spam phone calls.

164.   Additionally, Plaintiff Johnson has had to contact her financial institutions and change several of her passwords as she has had various accounts hacked – such as her InstaCart App account – which resulted in a loss of income due to needing to freeze the accounts.

165.   Plaintiff Johnson places significant value in the security of her PII. Plaintiff Johnson entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

166.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Johnson and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Johnson and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

167.   As a result of the Data Breach, Plaintiff Johnson has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

## XXII. Plaintiff Keller

168.   Plaintiff Johnathan Keller ("Plaintiff Keller") is a citizen and resident of the Commonwealth of Massachusetts.

169.   Plaintiff Keller was notified by text, email, and/or upon logging into his T-Mobile account of the Data Breach and the impact to her PII.

170.   Plaintiff Keller's PII was disclosed without his authorization to unknown third parties as a result of the Data Breach.

171.   As a result of the Data Breach, Plaintiff Keller spent time and effort researching the Data Breach, reviewing and monitoring his accounts for fraudulent activity, and dealing with an increase in phishing attempts and spam phone calls.

172.   Plaintiff Keller places significant value in the security of his PII. Plaintiff Keller entrusted his PII to T-Mobile with the understanding that T-Mobile

would keep his information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

173.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Keller and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Keller and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

174.   As a result of the Data Breach, Plaintiff Keller has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

## XXIII.        **Plaintiff Knutson**

175.    Plaintiff Ken Knutson ("Plaintiff Knutson") is a citizen and resident of the State of Illinois.

176.   Plaintiff Knutson was notified by text, email, and/or upon logging into his T-Mobile account of the Data Breach and the impact to his PII.

177.   Plaintiff Knutson's PII was disclosed without his authorization to unknown third parties as a result of the Data Breach.

178.   As a result of the Data Breach, Plaintiff Knutson spent time and effort researching the Data Breach, reviewing and monitoring his accounts for fraudulent activity, and is planning on signing up for credit monitoring services.

179.   Plaintiff Knutson places significant value in the security of his PII. Plaintiff Knutson entrusted his PII to T-Mobile with the understanding that T-Mobile would keep his information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

180.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Knutson and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Knutson and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

181.   As a result of the Data Breach, Plaintiff Knutson has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**XXIV.     Plaintiff Kruse**

182.   Plaintiff Brandon Kruse ("Plaintiff Kruse") is a citizen and resident of the State of Florida.

183.   Plaintiff Kruse was notified by text, email, and/or upon logging into his T-Mobile account of the Data Breach and the impact to her PII.

184.   Plaintiff Kruse's PII was disclosed without his authorization to unknown third parties as a result of the Data Breach.

185.   As a result of the Data Breach, Plaintiff Kruse spent time and effort researching the Data Breach, and reviewing and monitoring his accounts for fraudulent activity.

186.   Plaintiff Kruse places significant value in the security of his PII. Plaintiff Kruse entrusted his PII to T-Mobile with the understanding that T-Mobile would keep his information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

187.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Kruse and Class Members suffered actual

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Kruse and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

188.   As a result of the Data Breach, Plaintiff Kruse has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**XXV. Plaintiff Layman**

189.   Plaintiff Charles Layman ("Plaintiff Layman") is a citizen and resident of the State of Ohio.

190.   Plaintiff Layman was notified upon logging into his T-Mobile account of the Data Breach and the impact to his PII.

191.   Plaintiff Layman's PII was disclosed without his authorization to unknown third parties as a result of the Data Breach.

192.   As a result of the Data Breach, Plaintiff Layman spent time and effort researching the Data Breach, reviewing and monitoring his accounts for fraudulent activity, checking his credit scores to make sure nothing is wrong, and dealing with an increase in spam telephone calls.

193.   Plaintiff Layman places significant value in the security of his PII. Plaintiff Layman entrusted his PII to T-Mobile with the understanding that T-Mobile would keep his information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

194.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Layman and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for

fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Layman and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

195.   As a result of the Data Breach, Plaintiff Layman has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**XXVI.      Plaintiff Limberger**

196.   Plaintiff Johnathan Limberger ("Plaintiff Limberger") is a citizen and resident of the State of Michigan.

197.   Plaintiff Limberger was notified by text, email, and/or upon logging into his T-Mobile account of the Data Breach and the impact to his PII.

198.   Plaintiff Limberger's PII was disclosed without his authorization to unknown third parties as a result of the Data Breach.

199.   As a result of the Data Breach, Plaintiff Limberger spent time and effort researching the Data Breach, reviewing and monitoring his accounts for fraudulent activity, dealing with – and blocking – almost one hundred spam calls, text messages and emails, and changing all of his passwords.

200.   Plaintiff Limberger places significant value in the security of his PII. Plaintiff Limberger entrusted his PII to T-Mobile with the understanding that T-Mobile would keep his information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

201.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Limberger and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity

theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Limberger and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

202.   As a result of the Data Breach, Plaintiff Limberger has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**XXVII.   Plaintiff Lopez**

203.   Plaintiff Carmen V. Lopez ("Plaintiff Lopez") is a citizen and resident of the State of Connecticut.

204.   Plaintiff Lopez was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

205.   Plaintiff Lopez's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

206.   As a result of the Data Breach, Plaintiff Lopez spent time and effort researching the Data Breach, and reviewing and monitoring her accounts for fraudulent activity.

207.   Plaintiff Lopez places significant value in the security of her PII. Plaintiff Lopez entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

208.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Lopez and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Lopez and Class Members will now be forced to expend

additional time to review their credit reports and monitor their accounts for fraud or identify theft.

209.   As a result of the Data Breach, Plaintiff Lopez has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**XXVIII. Plaintiff Mandal**

210.   Plaintiff Kirti Mandal ("Plaintiff Mandal") is a citizen and resident of the State of New Jersey.

211.   Plaintiff Mandal was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

212.   Plaintiff Mandal's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

213.   As a result of the Data Breach, Plaintiff Mandal spent time and effort researching the Data Breach, reviewing and monitoring her accounts for fraudulent activity, dealing with an increase in phishing attempts, and changing all of her passwords.

214.   Plaintiff Mandal places significant value in the security of her PII. Plaintiff Mandal entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

215.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Mandal and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Mandal and Class Members will now be forced to expend

additional time to review their credit reports and monitor their accounts for fraud or identify theft.

216.  As a result of the Data Breach, Plaintiff Mandal has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

### XXIX. Plaintiff Maya

217.  Plaintiff Natalia Maya ("Plaintiff Maya") is a citizen and resident of the State of Florida.

218.  Plaintiff Maya was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

219.  Plaintiff Maya's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

220.  As a result of the Data Breach, Plaintiff Maya spent time and effort researching the Data Breach, reviewing and monitoring her accounts for fraudulent activity, changing her passwords, and dealing with an increase in spam telephone calls.

221.  Plaintiff Maya places significant value in the security of her PII. Plaintiff Maya entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

222.  As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Maya and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Maya and Class Members will now be forced to expend

additional time to review their credit reports and monitor their accounts for fraud or identify theft.

223.   As a result of the Data Breach, Plaintiff Maya has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**XXX.       Plaintiff Melton**

224.   Plaintiff Patrick Melton ("Plaintiff Melton") is a citizen and resident of the State of Texas.

225.   Plaintiff Melton was notified by text, email, and/or upon logging into his T-Mobile account of the Data Breach and the impact to her PII.

226.   Plaintiff Melton's PII was disclosed without his authorization to unknown third parties as a result of the Data Breach.

227.   As a result of the Data Breach, Plaintiff Melton spent time and effort researching the Data Breach, reviewing and monitoring his accounts for fraudulent activity, and signing up and paying for credit monitoring services, and investigating what he believes to be attempts at identity theft.

228.   Plaintiff Melton places significant value in the security of his PII. Plaintiff Melton entrusted his PII to T-Mobile with the understanding that T-Mobile would keep his information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

229.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Melton and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Melton and Class Members will now be forced to expend

additional time to review their credit reports and monitor their accounts for fraud or identify theft.

230.   As a result of the Data Breach, Plaintiff Melton has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**XXXI.      Plaintiff Mills**

231.   Plaintiff Brian Mills ("Plaintiff Mills") is a citizen and resident of the State of New York.

232.   Plaintiff Mills was notified by text, email, and/or upon logging into his T-Mobile account of the Data Breach and the impact to her PII.

233.   Plaintiff Mills' PII was disclosed without his authorization to unknown third parties as a result of the Data Breach.

234.   As a result of the Data Breach, Plaintiff Mills spent time and effort researching the Data Breach, and reviewing and monitoring his accounts for fraudulent activity.

235.   Plaintiff Mills places significant value in the security of his PII. Plaintiff Mills entrusted his PII to T-Mobile with the understanding that T-Mobile would keep his information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

236.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Mills and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Mills and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

237.  As a result of the Data Breach, Plaintiff Mills has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**XXXII.    Plaintiff Mitchell**

238.  Plaintiff Tina Mitchell ("Plaintiff Mitchell") is a citizen and resident of the State of California.

239.  Plaintiff Mitchell was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

240.  Plaintiff Mitchell's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

241.  As a result of the Data Breach, Plaintiff Mitchell spent time and effort researching the Data Breach, reviewing and monitoring her accounts for fraudulent activity, contacting her financial institutions and creditors, changing her passwords, dealing with an increase in spam telephone calls, phishing attempts, and a SIM swap.

242.  Plaintiff Mitchell places significant value in the security of her PII. Plaintiff Mitchell entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

243.  As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Mitchell and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Mitchell and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

244. As a result of the Data Breach, Plaintiff Mitchell has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

### XXXIII. Plaintiff Osorio

245. Plaintiff Francis Osorio ("Plaintiff Osorio") is a citizen and resident of the Commonwealth of Massachusetts.

246. Plaintiff Osorio was notified by text, email, and/or upon logging into their T-Mobile account of the Data Breach and the impact to her PII.

247. Plaintiff Osorio's PII was disclosed without their authorization to unknown third parties as a result of the Data Breach.

248. As a result of the Data Breach, Plaintiff Osorio spent time and effort researching the Data Breach and reviewing and monitoring their accounts for fraudulent activity.

249. Plaintiff Osorio places significant value in the security of their PII. Plaintiff Osorio entrusted their PII to T-Mobile with the understanding that T-Mobile would keep their information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

250. As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Osorio and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Osorio and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

251. As a result of the Data Breach, Plaintiff Osorio has been and will continue to be at a heightened and substantial risk of future identity theft and its

attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**XXIV.     Plaintiff Padilla**

252.   Plaintiff Jennifer Padilla ("Plaintiff Padilla") is a citizen and resident of the State of Illinois.

253.   Plaintiff Padilla was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

254.   Plaintiff Padilla's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

255.   As a result of the Data Breach, Plaintiff Padilla spent time and effort researching the Data Breach, reviewing and monitoring her accounts for fraudulent activity, dealing with an increase in spam telephone calls and phishing attempts, and calling T-Mobile to cancel her phone service.

256.   Plaintiff Padilla places significant value in the security of her PII. Plaintiff Padilla entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

257.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Padilla and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Padilla and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

258.   As a result of the Data Breach, Plaintiff Padilla has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and

is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

### XXXV.    Plaintiff Pry

259.   Plaintiff Helene Gayle Pry ("Plaintiff Pry") is a citizen and resident of the State of Florida.

260.   Plaintiff Pry was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

261.   Plaintiff Pry's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

262.   As a result of the Data Breach, Plaintiff Pry spent time and effort researching the Data Breach, reviewing and monitoring her accounts for fraudulent activity, dealing with someone else fraudulently using her credit card, and having a hard time being approved for a car loan.

263.   Plaintiff Pry places significant value in the security of her PII. Plaintiff Pry entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

264.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Pry and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Pry and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

265.   As a result of the Data Breach, Plaintiff Pry has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

### XXXVI.     Plaintiff Resnick

266.     Plaintiff Greg Seth Resnick ("Plaintiff Resnick") is a citizen and resident of the State of New York.

267.   Plaintiff Resnick was notified by text, email, and/or upon logging into his T-Mobile account of the Data Breach and the impact to his PII.

268.   Plaintiff Resnick's PII was disclosed without his authorization to unknown third parties as a result of the Data Breach.

269.   As a result of the Data Breach, Plaintiff Resnick spent time and effort researching the Data Breach, reviewing and monitoring his accounts for fraudulent activity, and dealing with an increase in spam telephone calls and phishing attempts.

270.   Plaintiff Resnick places significant value in the security of his PII. Plaintiff Resnick entrusted his PII to T-Mobile with the understanding that T-Mobile would keep his information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

271.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Resnick and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Resnick and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

272.   As a result of the Data Breach, Plaintiff Resnick has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

### XXXVII.   Plaintiff Robbins

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

273.    Plaintiff Jeremy Robbins ("Plaintiff Robbins") is a citizen and resident of the State of North Carolina.

274.    Plaintiff Robbins was notified by text, email, and/or upon logging into his T-Mobile account of the Data Breach and the impact to his PII.

275.    Plaintiff Robbins's PII was disclosed without his authorization to unknown third parties as a result of the Data Breach.

276.    As a result of the Data Breach, Plaintiff Robbins spent time and effort researching the Data Breach, reviewing and monitoring his accounts for fraudulent activity, contacting the credit bureaus, and dealing with an increase in spam and phishing attempts.

277.    Plaintiff Robbins places significant value in the security of his PII. Plaintiff Robbins entrusted his PII to T-Mobile with the understanding that T-Mobile would keep his information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

278.    As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Robbins and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Robbins and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

279.    As a result of the Data Breach, Plaintiff Robbins has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**XXXVIII.   Plaintiff Rodgers**

280.   Plaintiff Terri Rodgers ("Plaintiff Rodgers") is a citizen and resident of the State of New York.

281.   Plaintiff Rodgers was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

282.   Plaintiff Rodgers's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

283.   As a result of the Data Breach, Plaintiff Rodgers spent time and effort researching the Data Breach, reviewing and monitoring her accounts for fraudulent activity, changing her passwords, and dealing with an increase in spam telephone calls and emails.

284.   Plaintiff Rodgers places significant value in the security of her PII. Plaintiff Rodgers entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

285.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Rodgers and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Rodgers and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

286.   As a result of the Data Breach, Plaintiff Rodgers has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**XXXIX.   Plaintiff Rostine**

287.   Plaintiff Jessica Rostine ("Plaintiff Rostine") is a citizen and resident of the State of Ohio.

288.   Plaintiff Rostine was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

289.   Plaintiff Rostine's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

290.   As a result of the Data Breach, Plaintiff Rostine spent time and effort researching the Data Breach and reviewing and monitoring her accounts for fraudulent activity.

291.   Plaintiff Rostine places significant value in the security of her PII. Plaintiff Rostine entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

292.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Rostine and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Rostine and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

293.   As a result of the Data Breach, Plaintiff Rostine has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

## XL.   Plaintiff Salcedo

294.   Plaintiff Cindy Salcedo ("Plaintiff Salcedo") is a citizen and resident of the State of New York.

295.   Plaintiff Salcedo was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

296.   Plaintiff Salcedo's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

297.   As a result of the Data Breach, Plaintiff Salcedo spent time and effort researching the Data Breach, reviewing and monitoring her accounts for fraudulent activity, changing her passwords, and dealing with an increase in spam telephone calls.

298.   Plaintiff Salcedo places significant value in the security of her PII. Plaintiff Salcedo entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

299.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Salcedo and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Salcedo and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

300.   As a result of the Data Breach, Plaintiff Salcedo has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**XLI. Plaintiff Schettini**

301.   Plaintiff Gary Schettini ("Plaintiff Schettini") is a citizen and resident of the Commonwealth of Massachusetts.

302.   Plaintiff Schettini was notified by text, email, and/or upon logging into his T-Mobile account of the Data Breach and the impact to his PII.

303.   Plaintiff Schettini's PII was disclosed without his authorization to unknown third parties as a result of the Data Breach.

304.   As a result of the Data Breach, Plaintiff Schettini spent time and effort researching the Data Breach, reviewing and monitoring his accounts for fraudulent activity, and dealing with someone fraudulently opening a Verizon wireless account under his name.

305.   Plaintiff Schettini places significant value in the security of his PII. Plaintiff Schettini entrusted his PII to T-Mobile with the understanding that T-Mobile would keep his information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

306.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Schettini and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Schettini and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

307.   As a result of the Data Breach, Plaintiff Schettini has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

## XLII. Plaintiff Torres

308.   Plaintiff Patricia Torres ("Plaintiff Torres") is a citizen and resident of the State of New York.

309.   Plaintiff Torres was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

310.   Plaintiff Torres's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

311.   As a result of the Data Breach, Plaintiff Torres spent time and effort researching the Data Breach, and reviewing and monitoring her accounts for fraudulent activity.

312.   Plaintiff Torres places significant value in the security of her PII. Plaintiff Torres entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

313.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Torres and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Torres and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

314.   As a result of the Data Breach, Plaintiff Torres has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**XLIII.      Plaintiff Valdez**

315.   Plaintiff Joseph Valdez ("Plaintiff Valdez") is a citizen and resident of the State of Michigan.

316.   Plaintiff Valdez was notified by text, email, and/or upon logging into his T-Mobile account of the Data Breach and the impact to her PII.

317. Plaintiff Valdez's PII was disclosed without his authorization to unknown third parties as a result of the Data Breach.

318. As a result of the Data Breach, Plaintiff Valdez spent time and effort researching the Data Breach, and reviewing and monitoring his accounts for fraudulent activity.

319. Plaintiff Valdez places significant value in the security of his PII. Plaintiff Valdez entrusted his PII to T-Mobile with the understanding that T-Mobile would keep his information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

320. As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Valdez and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Valdez and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

321. As a result of the Data Breach, Plaintiff Valdez has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

## XLIV.      Plaintiff Vann

322. Plaintiff Gabrielle D. Vann ("Plaintiff Vann") is a citizen and resident of the State of New York.

323. Plaintiff Vann was notified by text, email, and/or upon logging into her T-Mobile account of the Data Breach and the impact to her PII.

324. Plaintiff Vann's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

325.    As a result of the Data Breach, Plaintiff Vann spent time and effort researching the Data Breach, and reviewing and monitoring her accounts for fraudulent activity.

326.    Plaintiff Vann places significant value in the security of her PII. Plaintiff Vann entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

327.    As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Vann and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Vann and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

328.    As a result of the Data Breach, Plaintiff Vann has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**XLV. Plaintiff Williams**

329.    Plaintiff Brendan Williams ("Plaintiff Williams") is a citizen and resident of the State of Texas.

330.    Plaintiff Williams was notified by text, email, and/or upon logging into his T-Mobile account of the Data Breach and the impact to his PII.

331.    Plaintiff Williams' PII was disclosed without his authorization to unknown third parties as a result of the Data Breach.

332.    As a result of the Data Breach, Plaintiff Williams spent time and effort researching the Data Breach, reviewing and monitoring his accounts for fraudulent

activity, and dealing with an increase in phishing attempts, spam phone calls and text messages.

333.   Plaintiff Williams places significant value in the security of his PII. Plaintiff Williams entrusted his PII to T-Mobile with the understanding that T-Mobile would keep his information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

334.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Williams and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Williams and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

335.   As a result of the Data Breach, Plaintiff Williams has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**XLVI.      Plaintiff Wilson**

336.   Plaintiff Isaac Wilson ("Plaintiff Wilson") is a citizen and resident of the State of California.

337.   Plaintiff Wilson was notified by text, email, and/or upon logging into his T-Mobile account of the Data Breach and the impact to his PII.

338.   Plaintiff Wilson's PII was disclosed without his authorization to unknown third parties as a result of the Data Breach.

339.   As a result of the Data Breach, Plaintiff Wilson spent time and effort researching the Data Breach and reviewing and monitoring his accounts for fraudulent activity.

340.   Plaintiff Wilson places significant value in the security of his PII. Plaintiff Wilson entrusted his PII to T-Mobile with the understanding that T-Mobile would keep his information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

341.   As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Wilson and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Wilson and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

342.   As a result of the Data Breach, Plaintiff Wilson has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**DEFENDANTS**

343.   Defendant T-Mobile US, Inc. and its wholly owned subsidiary Defendant T-Mobile USA, Inc. ("Defendants" or "T-Mobile") are a telecommunications company that provides wireless, messaging, and data services along with mobile phones and accessories.

344.   T-Mobile's headquarters are located at 12920 SE 38th Street, Bellevue, Washington, 98006, and they are incorporated under the laws of Delaware.

345.   T-Mobile was entrusted with and was in possession of Plaintiff's PII.

<u>**FACTUAL ALLEGATIONS**</u>

**THE DATA BREACH**

346.   On January 19, 2023, T-Mobile announced in a U.S. Securities and Exchange Commission ("SEC") Form 8-K ("SEC 8-K") filing that a "bad actor" had

compromised the PII of "approximately 37 million current postpaid and prepaid customer accounts" "without authorization."

347.   Although T-Mobile has released very little public information about the Data Breach, their SEC 8-K stated that their customers' PII was compromised through an "Application Programming Interface" ("API"). APIs are instructions that allow applications to access data and interact with web databases and, if left improperly secured, APIs can be leveraged by malicious actors to mass-harvest information stored in those databases.

348.   Upon detection of the Data Breach, T-Mobile's SEC 8-K stated the company "promptly commenced an investigation with external cybersecurity experts," and "within a day of learning of the malicious activity, we were able to trace the source of the malicious activity and stop it," asserting that "the malicious activity appears to be fully contained at this time."

349.   T-Mobile's SEC 8-K revealed that it believes "the bad actor first retrieved data through the impacted API starting on or around November 25, 2022," and that if failed to detect the unauthorized activity until January 5, 2023.

350.   Jake Williams, an analyst at the *Institute for Applied Network Security*, stated about the most recent Data Breach, that "the bottom line" is that T-Mobile's failure to detect the breach for approximately six weeks indicates that "T-Mobile's API security clearly needs work"—as it "shouldn't be having mass API abuse for more than six weeks."

351.   Chester Wisniewski, field chief technical officer of applied research at the security firm *Sophos*, opined that it was "concerning that the criminals were in T-Mobile's system for more than a month before being discovered," as this "suggests T-Mobile's defenses do not utilize modern security monitoring and threat hunting teams, as you might expect to find in a large enterprise like a mobile network operator."

352.   According to T-Mobile's SEC 8-K, the types of PII compromised in this Data Breach include, but are not limited to: "name, billing address, email, phone

number, date of birth, T-Mobile account number and information such as the number of lines on the account and plan features."

**T-MOBILE FAILED TO PROVIDE ADEQUATE NOTICE**

353.   T-Mobile's SEC 8-K stated the company has "notified certain federal agencies about the incident" and has "begun notifying customers whose information may have been obtained by the bad actor in accordance with applicable state and federal requirements."

354.   However, data breach notices sent to and received by victims of the Data Breach, including Plaintiffs, are woefully deficient. Instead of warning Data Breach victims that they are at significant risk of identity theft and fraud, the notice by T-Mobile states that T-Mobile "prevented the most sensitive types of customer information from being accessed," and that "[c]ustomer accounts and finances are not put directly at risk by this event."

355.   T-Mobile's January 19, 2023 press release announcing the Data Breach further downplayed the value of what was stolen, stating that it believed "[n]o passwords, payment card information, social security numbers, government ID numbers or other financial account information were compromised" and asserting that "no information was obtained for impacted customers that would compromise the safety of customer accounts or finances," and that "customer accounts and finances should not be put at risk directly by this event."

356.   These statements are highly misleading as the PII compromised in the Data Breach significantly increases the risk of identity theft and fraud for victims. For example, Chester Wisniewski at *Sophos*, stated "[t]he information stolen in this breach is ideal for ***SIM swapping attacks*** and other forms of identity theft," which "should be another reason for T-Mobile customers to lock down their accounts and move away from SMS-based multifactor authentication" for their accounts. (emphasis added).

357.   Here, Data Breach victims, including Plaintiffs, are at significant risk of "SIM swapping attacks," where cybercriminals contact a wireless carrier and use

stolen PII to pass themselves off as an account holder, then ask that their phone number be transferred to a new SIM card, which gives them access to not only the wireless number and account, but also any two-factor authentication codes that might come to the phone via text message.

358.   Justin Fier, senior vice president at the security company *Darktrace*, stated that such massive consumer profiles could be of use to everyone from nation-state hackers to criminal syndicates: "There are dozens of ways that the information that was stolen could be weaponized…there's a bigger possibility they'll be targeted by scammers, possibly impersonating T-Mobile, either by phone or email…[and] with key tidbits of information like account numbers, those scammers will sound much more convincing."

359.   Data security researcher Brian Krebs, from the leading data privacy blog *Krebs on Security*, stated that "if the past is any teacher much of [the compromised data] will wind up posted online soon," and "[i]t is a safe bet that scammers will use some of this information to target T-Mobile users with phishing messages, account takeovers and harassment."

360.   For this reason, Krebs goes onto say, that "T-Mobile customers should fully expect to see phishers taking advantage of public concern over the breach to impersonate the company—and possibly even send messages that include the recipient's compromised account details to make the communications look more legitimate." Similarly, Krebs has said, "[d]ata stolen and exposed in this breach may also be used for identity theft," including SIM swap attacks, because "[m]any online services allow users to reset their passwords just by clicking a link sent via SMS," as mobile phone numbers have become "de facto identity documents." According to Krebs, this in turn results in "losing control over your phone number thanks to an unauthorized SIM swap."

361.   T-Mobile's notification efforts to Plaintiffs and Class Members fell woefully short of providing crucial information about the Data Breach. These notification efforts consisted of brief messages with little substantive information

that failed to warn victims to take action to protect themselves from identity theft and fraud. These notification efforts caused the harm suffered by Plaintiffs and Class Members, by failing to timely provide them with the necessary details about the Data Breach.

**T-MOBILE'S HISTORY OF DATA BREACHES**

362.    This Data Breach is directly attributable to T-Mobile's repeated history of security failures. Data breaches have now become an annual event for T-Mobile the last several years. This particular Data Breach is at least T-Mobile's *eighth* data breach since 2017.

363.    In 2017, Karan Saini, a security researcher, found a "bug" on a T-Mobile website that allowed hackers to access PII such as email addresses, account numbers, and IMSI numbers, just by knowing or guessing a customer's phone number. According to Saini, T-Mobile had 76 million customers, and an attacker could have run a script to scrape the data (email, name, billing account number, IMSI number, other numbers under the same account which are usually family members) from all 76 million of these customers to create a searchable database with accurate and up-to-date information of all users, making every T-Mobile cell phone owner a victim. T-Mobile had no mechanism in place to prevent this type of critical data breach.  According to a hacker, the "bug" had been exploited by multiple hackers over a multi-week period before it was discovered by Saini. The hackers who found the "bug" before Saini even uploaded a tutorial on how to exploit it on YouTube.

364.    In 2018, hackers gained access to T-Mobile servers and stole the PII of roughly two million T-Mobile customers. The stolen PII included names, email addresses, account numbers, other billing information, and encrypted passwords. T-Mobile misleadingly downplayed the hack, claiming that no passwords were "compromised," when in reality hackers stole millions of encrypted passwords that were likely decrypted by the hackers due to the weak encoding algorithm employed by T-Mobile, leading security experts to advise affected customers to assume their passwords were cracked and change them as a result.

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

365.   In 2019, hackers accessed the PII of roughly 1 million T-Mobile prepaid customers. The PII included names, phone numbers, addresses, account information, and rate, plan, and calling features.

366.   In March 2020, T-Mobile disclosed it was subject to a data breach that exposed customer and employee PII, including names, addresses, social security numbers, financial account information, government identification numbers, phone numbers, and billing account information.

367.   Later in 2020, T-Mobile suffered yet another data breach in which hackers accessed T-Mobile's customer proprietary network information ("CPNI") and undisclosed call-related information for hundreds of thousands of customers.

368.   In August 2021, reports emerged that T-Mobile had suffered one of the largest data breaches in history, in which cybercriminals exploited T-Mobile's data security protocols and gained access to internal servers containing the PII of approximately 76.6 million current, former, and prospective T-Mobile customers—including names, addresses, dates of birth, driver's license numbers, Social Security Numbers, phone numbers, and unique technical identifiers tethered to customers' mobile phones—exfiltrating a purported 106 GB of this data and posting a subset of the stolen PII for sale on the "dark web."

369.   In December 2021, T-Mobile disclosed that several customers had experienced SIM swap attacks, stating: "We informed a very small number of customers that the SIM card assigned to a mobile number on their account may have been illegally reassigned or limited account information was viewed."

370.   Further, in April 2022 it was announced that members of the *LAPSUS$* cybercrime group breached T-Mobile multiple times in March, stealing source code for a range of company projects and accessing employee accounts with access to an internal T-Mobile tool for managing customer accounts.

371.   As Chester Wisniewski at *Sophos* stated about the most recent Data Breach, "I'm certainly disappointed to hear that, after as many breaches as they've

had, they still haven't been able to shore up their leaky ship," deadpanning "[a]nother day, another T-Mobile breach."

372.   Similarly, Neil Mack, senior analyst for *Moody's Investors Service*, stated "[w]hile these cybersecurity breaches may not be systemic in nature, their frequency of occurrence at T-Mobile is an alarming outlier relative to telecom peers," noting that this Data Breach raises serious questions about T-Mobile's security practices and cyber governance.

373.   Given the numerous data breaches pre-dating this Data Breach, T-Mobile was clearly on notice and aware of its data security failures. The fact that subsequent data breaches have occurred reinforces that Plaintiffs' PII, which remains in T-Mobile's possession, is not safe.

**T-MOBILE'S COLLECTION AND STORAGE OF PII**

374.   T-Mobile is a publicly traded company and the second largest wireless carrier in the United States, with over 100 million current subscribers.

375.   T-Mobile's Privacy Policy, available on its website, states that it applies "to personal data we have about you," meaning data that "identifies, relates to, describes, can be associated with, or could reasonably identify you as an individual." This includes "data like your name, address, or email address, as well as less obvious data like demographic data, device and usage data, call records, advertising ID, and location data[.]"

376.   The Privacy Policy further states that it applies to "all personal data we collect and use when you access or use our cell and data services, websites, apps, and other services (our 'services'), purchase and use our devices and products ('products'), visit our retail stores, or communicate or interact with us in any way."

377.   T-Mobile's Privacy Policy provides customers with detailed promises regarding the treatment of their PII, including how T-Mobile uses customers' data for its own benefit and profit. For example, T-Mobile confirms that it uses customers' personal data to "[a]dvertise and market products and services from T-Mobile and other companies to you, including through targeted advertising and

communications about promotions and events, contents, and sweepstakes"; and to "[c]onduct research and create reports from analysis of things like usage patterns and trends and deidentify or aggregate personal data to create business and market analysis and reports."

378.    T-Mobile agreed that it would only share data under certain circumstances, which include: "*with your consent or at your direction," "with the account holder*," "between T-Mobile brands and companies," "to provide benefits," "to our service providers," "to other third parties . . . for uses described in this notice or for purposes you have requested," "for identity verification and fraud prevention services," "caller ID providers," "in a business transfer or transaction" which is specified as a "corporate business transaction like an acquisition, divestiture, sale of company assets," and "for legal process and protection." (emphasis added).

379.    None of the enumerated circumstances involve sharing Plaintiffs' or the Class Members' PII with hackers and cyber criminals.

380.    After limiting the ways it would share PII and also listing the ways T-Mobile benefits and profits from tracking and targeting its customers and non-customers through collecting and maintaining their valuable PII, T-Mobile's Privacy Policy pledges to them that their PII is secure, stating that: (i) personal data will be disclosed only "*with your consent, which we may get in writing, online, or orally*," and (ii) T-Mobile uses "*administrative, technical, contractual, and physical safeguards designed to protect your data*." (emphasis added).

381.    As discussed herein, T-Mobile failed to comply with these Privacy Policy promises to protect Plaintiffs' and Class Members' PII.

382.    T-Mobile's acknowledges that consumers "*trust T-Mobile to connect you to the world every day, and we're working hard to earn a place in your heart. A big part of that is maintaining your privacy. We believe you deserve transparency, education, choice, protection, and simplicity*." (emphasis added). These are empty promises for the millions of consumers affected by T-Mobile's most recent Data Breach.

## T-MOBILE FAILED TO COMPLY WITH DATA SECURITY INDUSTRY STANDARDS

383.   T-Mobile is well aware of the importance of safeguarding Plaintiffs' and Class Members' PIII, that by virtue of their business—a wireless carrier who collects PII—they place Plaintiffs' and Class Members' PII at risk of being targeted by cybercriminals.

384.   Thus, T-Mobile is aware that the PII that they collect, organize, and store, can be used by cybercriminals to engage in crimes such as identity fraud and theft using Plaintiffs' and Class Members' PII.

385.   Because T-Mobile failed to implement, maintain, and comply with necessary cybersecurity requirements, as a result, T-Mobile was unable to protect Plaintiffs' and Class Members' information and confidentiality, and protect against obvious and readily foreseeable threats to information security and confidentiality.

386.   As a proximate result of such failures, cybercriminals gained unauthorized access to T-Mobile's network and acquired Plaintiffs' and Class Members' PII in the Data Breach without being stopped.

387.   T-Mobile was unable to prevent the Data Breach and was unable to detect the unauthorized access to vast quantities of sensitive and protected files containing Plaintiffs' and Class Members' PII.

388.   Commonly accepted data security standards among businesses that store personal information, such as the PII involved here, include, but are not limited to: maintaining a secure firewall configuration; monitoring for suspicious or irregular traffic to servers; monitoring for suspicious credentials used to access servers; monitoring for suspicious or irregular activity by known users; monitoring for suspicious or unknown users; monitoring for suspicious or irregular server requests; monitoring for server requests for personal and financial information; monitoring for server requests from VPNs; and monitoring for server requests from Tor exit nodes.

389.   Based upon the known details of the Data Breach and how it occurred, T-Mobile also failed to fully comply with industry-standard cybersecurity practices, including, but not limited to, proper firewall configuration, network segmentation, secure credential storage, rate limiting, user-activity monitoring, data-loss prevention, and intrusion detection and prevention.

390.   The U.S. Federal Trade Commission ("FTC") publishes guides for businesses for Cybersecurity (*Start with Security: A Guide for Business*, (June 2015)) and protection of personal and financial information (*Protecting Personal Information: A Guide for Business*, (Oct. 2016)), which includes basic security standards applicable to all types of businesses.

391.   The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

392.   Because T-Mobile were entrusted with Plaintiffs' and Class Members' PII, they had and have a duty to keep the PII secure.

393.   Plaintiffs and Class Members reasonably expect that when they entrusted their PII to T-Mobile they will safeguard their information.

394.   Despite T-Mobile's obligations, T-Mobile failed to appropriately monitor and maintain their data security systems in a meaningful way so as to prevent the Data Breach.

395.   Had T-Mobile properly maintained their systems and adequately protected them, they could have prevented the Data Breach.

**T-MOBILE VIOLATED THEIR COMMON LAW DUTY OF REASONABLE CARE**

396.  T-Mobile was aware of the importance of security in maintaining personal information (particularly sensitive personal information like the PII involved here), and the value consumers place on keeping their PII secure.

397.  In addition to obligations imposed by federal and state law, T-Mobile owed and continues to owe a common law duty to Plaintiffs and Class Members—who entrusted T-Mobile with their PII—to exercise reasonable care in receiving, maintaining, and storing, the PII in T-Mobile's possession.

398.  T-Mobile owed and continues to owe a duty to prevent Plaintiffs' and Class Members' PII from being compromised, lost, stolen, accessed, or misused by unauthorized third parties. An essential part of T-Mobile's duty was (and is) the obligation to provide reasonable security consistent with current industry best practices and requirements, and to ensure information technology systems and networks, in addition to the personnel responsible for those systems and networks, adequately protected and continue to protect Plaintiffs' and Class Members' PII.

399.  T-Mobile owed a duty to Plaintiffs and Class Members, who entrusted T-Mobile with extremely sensitive PII to design, maintain, and test the information technology systems that housed Plaintiffs' and Class Members' PII, to ensure that the PII in T-Mobile's possession was adequately secured and protected.

400.  T-Mobile owed a duty to Plaintiffs and Class Members to create, implement, and maintain reasonable data security practices and procedures sufficient to protect the PII stored in T-Mobile's systems. In addition, this duty also required T-Mobile to adequately train its employees and others with access to Plaintiffs' and Class Members' PII on the procedures and practices necessary to safeguard such sensitive information. This duty also required supervision, training, and compliance on T-Mobile's part to ensure that it complied with creating, implementing, and maintaining reasonable data security practices and procedures sufficient to protect Plaintiffs' and Class Members' PII.

401.   T-Mobile owed a duty to Plaintiffs and Class Members to implement processes that would enable T-Mobile to timely detect a breach of its information technology systems, and a duty to act upon any data security warnings or red flags detected by such systems in a timely fashion.

402.   T-Mobile owed a duty to Plaintiffs and Class Members to disclose when and if their information technology systems and data security practices were not sufficiently adequate to protect and safeguard Plaintiffs' and Class Members' PII.

403.   T-Mobile owed a duty to Plaintiffs and Class Members to timely and adequately disclose the fact that a data breach, resulting in unauthorized access to their PII, had occurred.

404.   T-Mobile breached these duties.

405.   T-Mobile failed to publicly describe the full extent of the Data Breach and notify affected parties. This demonstrates that T-Mobile did not properly implement measures designed to timely detect a data breach of their information technology systems, as required to adequately safeguard Plaintiffs' and Class Members' PII.

406.   T-Mobile also breached their duty to create, implement, and maintain reasonable data security practices and procedures sufficient to protect Plaintiffs' and Class Members' PII.

**THE VALUE OF PRIVATE INFORMATION AND EFFECTS OF UNAUTHORIZED DISCLOSURE**

407.   T-Mobile was well aware that the protected PII it acquires, stores, and utilizes is highly sensitive and of significant value to the owners of the PII and those who would use it for wrongful purposes.

408.   PII is a valuable commodity to identity thieves, particularly when it is aggregated in large numbers. Former United States Attorney General William P. Barr made clear that consumers' sensitive personal information commonly stolen in data breaches "has economic value."  The purpose of stealing large caches of personal data is to use it to defraud individuals or to place it for illegal sale and to

profit from other criminals who buy the data and use it to commit fraud and identity theft. Indeed, cybercriminals routinely post stolen personal information on anonymous websites, making the information widely available to a criminal underworld.

409. There is an active and robust market for this information. As John Sancenito, president of *Information Network Associates*, a company which helps companies with recovery after data breaches, explained after a data breach "[m]ost of the time what [data breach hackers] do is they steal the data and then they sell the data on the dark web to the people who actually commit the fraud."

410. The ramifications of T-Mobile's failure to keep Plaintiffs' and Class Members' PII secure are long lasting and severe. To avoid detection, identity thieves often hold stolen data for months or years before using it. Also, the sale of stolen information on the "dark web" may take months or more to reach end-users, in part because the data is often sold in small batches as opposed to in bulk to a single buyer. Thus, Plaintiffs and Class Members must vigilantly monitor their accounts *ad infinitum*.

411. Thus, T-Mobile knew, or should have known, the importance of safeguarding the PII entrusted to it and of the foreseeable consequences if its systems were breached. T-Mobile failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

412. As a highly sophisticated party that handles sensitive PII, T-Mobile failed to establish and/or implement appropriate administrative, technical and/or physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class Members' PII to protect against anticipated threats of intrusion of such information.

413. Identity thieves use stolen PII for various types of criminal activities, such as when personal information is used to commit fraud or other crimes, including credit card fraud, phone or utilities fraud, bank fraud and government fraud.

414. The PII exfiltrated in the Data Breach can also be used to commit identity theft by placing Plaintiffs and Class Members at a higher risk of "phishing,"

"vishing," "smishing," and "pharming," which are other ways for cybercriminals to exploit information they already have in order to get even more personally identifying information from a person through unsolicited email, text messages, and telephone calls purportedly from a legitimate company requesting personal, financial, and/or login credentials.

415.    There is often a lag time between when fraud occurs versus when it is discovered, as well as between when PII is stolen and when it is used. According to the *U.S. Government Accountability Offic*e, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

416.    Personal information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the cyber black market (i.e., the "dark web") for years.

417.    Plaintiffs and Class Members rightfully place a high value not only on their PII, but also on the privacy of that data.

418.    Thus, Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future.

419.    Data breaches are preventable. As Lucy Thompson wrote in the *Data Breach and Encryption Handbook*, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions." She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised…" and

"[m]ost of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures…Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs."

**T-MOBILE FAILED TO COMPLY WITH THE FTC ACT**

420.   T-Mobile is prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45, from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

421.   T-Mobile's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice that violates the FTC Act.

422.   The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

423.   In 2007, the FTC published guidelines establishing reasonable data security practices for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems. The guidelines also recommend that businesses consider using an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone may be trying to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

424.   The FTC has also published a document entitled "FTC Facts for Business," which highlights the importance of having a data security plan, regularly

assessing risks to computer systems, and implementing safeguards to control such risks.

425.   T-Mobile is aware of and failed to follow the FTC guidelines and failed to adequately secure PII.

426.   The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act.  Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

427.   T-Mobile failed to properly implement basic data security practices.  T-Mobile's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumer PII, or to prevent the disclosure of such information to unauthorized individuals constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

428.   T-Mobile was at all times fully aware of their obligations to protect the PII of consumers because of its business of obtaining, collecting, and storing PII.  T-Mobile was also aware of the significant repercussions that would result from their failure to do so.

## I.   THE DATA BREACH DAMAGED PLAINTIFFS AND CLASS MEMBERS

429.   The ramifications of T-Mobile's failure to keep PII secure are long-lasting and severe. Victims of data breaches are more likely to become victims of identity fraud.  In 2019 alone, consumers lost more than $1.9 billion to identity theft and fraud.

430.   Plaintiffs and Class Members have faced a substantial and imminent risk of identity theft and fraud as a result of the Data Breach.  Unauthorized third parties carried out the Data Breach and stole the personal information of Plaintiffs

and Class Members with the intent to use it for fraudulent purposes and/or sell it to other cybercriminals.

431.   The risk of identity theft is particularly substantial when the PII compromised is unique to a specific individual, as it is here.

432.   Plaintiffs and Class Members have spent and will continue to spend substantial amounts of time monitoring their accounts for identity theft and fraud, the opening of fraudulent accounts, disputing fraudulent transactions, and reviewing their financial affairs more closely than they otherwise would have done but for the Data Breach. These efforts are burdensome and time-consuming, especially because T-Mobile has failed to disclose the full extent of when the breach occurred or how long it lasted, forcing customers to continue to monitor their accounts indefinitely.

433.   Many Class Members will also incur out of pocket costs for protective measures such as identity theft protection, credit monitoring fees, credit report fees, credit freeze fees, fees for replacement cards, and similar costs related to the Data Breach.

434.   Plaintiffs and Class Members now face years of constant surveillance of their personal records, monitoring, and loss of rights.  Plaintiffs and the Class are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

435.   Plaintiffs and Class Members are now at heightened risk for "SIM swapping." Customers often request SIM swaps for legitimate reasons when they obtain new phones or switch mobile carriers. However, T-Mobile does not have adequate protections in place to prevent fraudulent SIM swap attacks from occurring, and the particular data released in the Data Breach makes it much more likely that a T-Mobile customer, such as Plaintiffs and Class Members, will become a victim of a SIM swap attack.

436.   In a fraudulent SIM swap, a would-be hacker contacts T-Mobile and impersonates the legitimate customer. This impersonation is made substantially easier when directed at T-Mobile customers, because hackers now have access to

data about T-Mobile customers, including their names, billing addresses, email, phone numbers, dates of birth, account number, information such as the number of lines on the account and plan features.

437.   Following a fraudulent SIM swap the subscriber (now victim)'s phone loses connection to the network, and they cannot use their network to call, text, or use the internet, and they are inhibited in their attempts to warn their wireless carrier of the fraud. Subsequently all phone calls and text messages that would normally have gone to the victim's phone now go to the fraudsters' phone.

438.   If the fraudster has even one other data point, such as an email address, they can often use the phone number to get into the victim's email account through the forgotten password feature, or by using the victim's legitimate phone number to pass *two-factor authentication*.

439.   Because customer email addresses were compromised in the Data Breach (and connected to a T-Mobile customer account), this data is now readily available to SIM swap hackers.

440.   Given T-Mobile's failure to protect Plaintiffs' and the Class Members' PII despite multiple data breaches in the past, Plaintiffs have a significant and cognizable interest in obtaining injunctive and equitable relief (in addition to any monetary damages, restitution, or disgorgement) that protects them from suffering further harm, as their PII remains in T-Mobile's possession.

441.   As a result of T-Mobile's failure to prevent the Data Breach, Plaintiffs and Class Members have suffered and will continue to suffer injuries, loss of time and productivity through efforts to ameliorate, mitigate, and deal with the future consequences of the Data Breach; theft of their valuable PII; the imminent and certainly impeding injury flowing from fraud and identity theft posed by their PII being disclosed to unauthorized recipients and cybercriminals; damages to and diminution in value of their PII; and continued risk to Plaintiffs' and the Class Members' PII, which remains in the possession of T-Mobile and which is subject to

further breaches so long as T-Mobile fails to undertake appropriate and adequate measures to protect the PII which it was entrusted.

442.   In the case of a data breach, merely reimbursing a consumer for a financial loss due to identity theft or fraud does not make that individual whole again. On the contrary, after conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems."

443.   Plaintiffs and Class Members also suffered a "loss of value" of their sensitive personal information when it was stolen by a hacker in the Data Breach. A robust market exists for stolen personal information. Hackers sell personal information on the dark web—an underground market for illicit activity, including the purchase of hacked personal information—at specific identifiable prices.

444.   Plaintiffs and Class Members also suffered "benefit of the bargain" damages. Plaintiffs and Class Members overpaid for services that should have been—but were not—accompanied by adequate data security. Part of the charges and fees Plaintiffs and Class Members paid to T-Mobile were intended to be used to fund adequate data security. Plaintiffs and Class Members did not get what they paid for.

445.   Class Members who experience actual identity theft and fraud will also be harmed by the inability to use their credit or debit cards when their accounts are suspended or otherwise rendered unusable due to fraudulent charges. To the extent Class Members are charged monthly/annual fees for their credit and/or debit accounts, they are left without the benefit of that bargain while they await receipt of their replacement cards. Class Members will be harmed further by the loss of rewards points or airline mileage that they cannot accrue while awaiting replacement cards. The inability to use payment cards may also result in missed payments on bills and loans, late charges and fees, and adverse effects on their credit, including decreased credit scores and adverse credit notations.

446.   A victim whose personal information has been stolen or compromised may not see the full extent of identity theft or fraud until long after the initial breach. Additionally, a victim whose PII has been stolen may not become aware of charges when they are nominal, as typical fraud-prevention algorithms may not capture such charges. Those charges may be repeated, over and over again, on a victim's account.

447.   The risk of identity theft and fraud will persist for years. Identity thieves often hold stolen data for months or years before using it to avoid detection. Also, the sale of stolen information on the dark web may take months or more to reach end-users, in part because the data is often sold in small batches to various individuals rather than in bulk to a single buyer. Thus, Plaintiffs and Class Members must vigilantly monitor their financial accounts *ad infinitum*.

## CLASS ACTION ALLEGATIONS

448.   Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), (b)(3), and (c)(4) on behalf of the following Nationwide Class:

> All persons in the United States whose personal information was compromised in the Data Breach made public by T-Mobile on January 19, 2023 ("Nationwide Class").

449.   Excluded from the Nationwide Class are T-Mobile, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which T-Mobile have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

450.   Plaintiffs reserve the right to modify, expand, or amend the above Nationwide Class definition or to seek certification of a class or classes defined differently than above before any court determine whether certification is appropriate following discover.

## CALIFORNIA SUBCLASS

451.   Plaintiffs brings this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), (b)(3), and (c)(4) on behalf of the following California Subclass:

All persons in California whose personal information was compromised in the Data Breach made public by T-Mobile on January 19, 2023 ("California Subclass").

452.   Excluded from the California Subclass are T-Mobile, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which T-Mobile have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

453.   Plaintiffs reserve the right to modify, expand, or amend the above California Class definition or to seek certification of a class or classes defined differently than above before any court determine whether certification is appropriate following discover.

## CONNECTICUT SUBCLASS

454.   Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following Connecticut Subclass:

All persons in Connecticut whose personal information was compromised in the Data Breach made public by T-Mobile on January 19, 2023 (the "Connecticut Subclass").

455.   Excluded from the Connecticut Subclass are T-Mobile, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which T-Mobile have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

456.   Plaintiffs reserve the right to modify, expand or amend the above Connecticut Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

## FLORIDA SUBCLASS

457.   Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following Florida Subclass:

All persons in Florida whose personal information was compromised in the Data Breach made public by T-Mobile on January 19, 2023 (the "Florida Subclass").

458.   Excluded from the Florida Subclass are T-Mobile, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which T-Mobile have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

459.   Plaintiffs reserve the right to modify, expand or amend the above Florida Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

## GEORGIA SUBCLASS

460.   Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following Georgia Subclass:

All persons in Georgia whose personal information was compromised in the Data Breach made public by T-Mobile on January 19, 2023 (the "Georgia Subclass").

461.   Excluded from the Georgia Subclass are T-Mobile, their subsidiaries and affiliates, their officers, directors and members of their immediate families and

any entity in which T-Mobile have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

462.   Plaintiffs reserve the right to modify, expand or amend the above Georgia Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

## ILLINOIS SUBCLASS

463.   Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following Illinois Subclass:

All persons in Illinois whose personal information was compromised in the Data Breach made public by T-Mobile on January 19, 2023 (the "Illinois Subclass").

464.   Excluded from the Illinois Subclass are T-Mobile, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which T-Mobile have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

465.   Plaintiffs reserve the right to modify, expand or amend the above Illinois Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

## MASSACHUSETTS SUBCLASS

466.   Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following Massachusetts Subclass:

All persons in Massachusetts whose personal information was compromised in the Data Breach made public by T-Mobile on January 19, 2023 (the "Massachusetts Subclass").

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

71

467.   Excluded from the Massachusetts Subclass are T-Mobile, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which T-Mobile have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

468.   Plaintiffs reserve the right to modify, expand or amend the above Massachusetts Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

## MAINE SUBCLASS

469.   Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following New York Subclass:

> All persons in New York whose personal information was compromised in the Data Breach made public by T-Mobile on January 19, 2023 (the "New York Subclass").

470.   Excluded from the Maine Subclass are T-Mobile, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which T-Mobile have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

471.   Plaintiffs reserve the right to modify, expand or amend the above New York Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MICHIGAN SUBCLASS

472.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following Michigan Subclass:

> All persons in Michigan whose personal information was compromised in the Data Breach made public by T-Mobile on January 19, 2023 (the "Michigan Subclass").

473.    Excluded from the Michigan Subclass are T-Mobile, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which T-Mobile have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

474.    Plaintiffs reserve the right to modify, expand or amend the above Michigan Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

## NEW JERSEY SUBCLASS

475.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following New Jersey Subclass:

> All persons in New Jersey whose personal information was compromised in the Data Breach made public by T-Mobile on January 19, 2023 (the "New Jersey Subclass").

476.    Excluded from the New Jersey Subclass are T-Mobile, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which T-Mobile have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

477.   Plaintiffs reserve the right to modify, expand or amend the above New Jersey Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

## NEW YORK SUBCLASS

478.   Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following New York Subclass:

All persons in New York whose personal information was compromised in the Data Breach made public by T-Mobile on January 19, 2023 (the "New York Subclass").

479.   Excluded from the New York Subclass are T-Mobile, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which T-Mobile have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

480.   Plaintiffs reserve the right to modify, expand or amend the above New York Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

## NORTH CAROLINA SUBCLASS

481.   Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following North Carolina Subclass:

All persons in North Carolina whose personal information was compromised in the Data Breach made public by T-Mobile on January 19, 2023 (the "North Carolina Subclass").

482.   Excluded from the North Carolina Subclass are T-Mobile, their subsidiaries and affiliates, their officers, directors and members of their immediate

families and any entity in which T-Mobile have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

483.   Plaintiffs reserve the right to modify, expand or amend the above North Carolina Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

## OHIO SUBCLASS

484.   Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following Ohio Subclass:

> All persons in Ohio whose personal information was compromised in the Data Breach made public by T-Mobile on January 19, 2023 (the "Ohio Subclass").

485.   Excluded from the Ohio Subclass are T-Mobile, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which T-Mobile have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

486.   Plaintiffs reserve the right to modify, expand or amend the above Ohio Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

## RHODE ISLAND SUBCLASS

487.   Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following Rhode Island Subclass:

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

All persons in Rhode Island whose personal information was compromised in the Data Breach made public by T-Mobile on January 19, 2023 (the "Rhode Island Subclass").

488.   Excluded from the Rhode Island Subclass are T-Mobile, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which T-Mobile have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

489.   Plaintiffs reserve the right to modify, expand or amend the above Rhode Island Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

## **TEXAS SUBCLASS**

490.   Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following Texas Subclass:

All persons in Texas whose personal information was compromised in the Data Breach made public by T-Mobile on January 19, 2023 (the "Texas Subclass").

491.   Excluded from the Texas Subclass are T-Mobile, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which T-Mobile have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

492.   Plaintiffs reserve the right to modify, expand or amend the above Texas Subclass definition or to seek certification of a class or classes defined differently

than above before any court determines whether certification is appropriate following discovery.

## **WASHINGTON SUBCLASS**

493.   Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following Washington Subclass:

> All persons in Washington whose personal information was compromised in the Data Breach made public by T-Mobile on January 19, 2023 (the "Washington Subclass"). [2]

494.   Excluded from the Washington Subclass are T-Mobile, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which T-Mobile have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

495.   Plaintiffs reserve the right to modify, expand or amend the above Washington Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

496.   Certification of Plaintiffs' claims for class-wide treatment are appropriate because all elements of Fed. R. Civ. P. 23(a), (b)(2)-(3), and (c)(4) are satisfied. Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

497.   **Numerosity:** All requirements of Fed. R. Civ. P. 23(a)(1) are satisfied. The Members of the Nationwide Class are so numerous and geographically

---

[2] Collectively, the California Subclass, Connecticut Subclass, Florida Subclass, Georgia Subclass, Illinois Subclass, Massachusetts Subclass, Maine Subclass, Michigan Subclass, New York Subclass, Ohio Subclass, Rhode Island Subclass and Texas Subclass are the "State Subclasses."

dispersed that individual joinder of all Class Members is impracticable. While the exact number of Class Members is unknown to Plaintiffs at this time, T-Mobile has acknowledged that millions of individuals' PII has been compromised in this Data Breach. Class Members may be identified through objective means. Class Members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

498. **Commonality and Predominance:** All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

a. Whether T-Mobile engaged in active misfeasance and misconduct alleged herein;

b. Whether T-Mobile owed a duty to Class Members to safeguard their sensitive personal information;

c. Whether T-Mobile breached its duty to Class Members to safeguard their sensitive personal information;

d. Whether T-Mobile knew or should have known that its data security systems and monitoring processes were deficient;

e. Whether Plaintiffs and Class Members suffered legally cognizable damages as a result of the Data Breach;

f. Whether T-Mobile's failure to provide adequate security proximately caused Plaintiffs' and Class Members' injuries; and

g. Whether Plaintiffs and Class Members are entitled to declaratory and injunctive relief.

499. **Typicality:** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiffs' claims are typical of the claims of all Class Members because Plaintiffs, like other Class Members and Subclass Members, suffered theft of their sensitive personal information in the Data Breach.

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

500.   **Adequacy of Representation:** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiffs are adequate Class representatives because they are Members of the Clases and State Subclasses and their interests do not conflict with the interests of other Class and Subclass Members that they seeks to represent. Plaintiffs are committed to pursuing this matter for the Class with the Class's collective best interest in mind. Plaintiffs have retained counsel competent and experienced in complex class action litigation of this type and Plaintiffs intend to prosecute this action vigorously. Plaintiffs, and their counsel, will fairly and adequately protect the Class's interests.

501.   **Predominance and Superiority:** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiffs' case will also resolve them for the Class's claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against T-Mobile, so it would be impracticable for Members of the Class to individually seek redress for T-Mobile's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

502.   **Cohesiveness:** All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. T-Mobile has acted, or refused to act, on grounds generally applicable to the Nationwide Class and State Subclasses such that final declaratory or injunctive relief is appropriate.

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

79

503.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.    Whether T-Mobile owed a legal duty to Plaintiffs and the Classes to exercise due care in collecting, storing, using, and safeguarding their PII;

b.    Whether T-Mobile's data security practices were reasonable in light of best practices recommended by data security experts;

c.    Whether T-Mobile's failure to institute adequate protective security measures amounted to negligence;

d.    Whether T-Mobile failed to take commercially reasonable steps to safeguard consumer PII; and

e.    Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

504.    Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on newly learned facts or legal developments that arise following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

## COUNT I

## NEGLIGENCE

**(On behalf of the Nationwide Class, or alternatively, the State Subclasses)**

505.    Plaintiffs reallege and incorporate by reference all preceding allegations as if fully set forth herein.

506.    T-Mobile obtained Plaintiffs' and Class Members' sensitive personal information in connection with Plaintiffs and Class Members signing up for T-Mobile's wireless services.

507.   By collecting and maintaining sensitive personal information, T-Mobile had a common law duty of care to use reasonable means to secure and safeguard the sensitive personal information and to prevent disclosure of the information to unauthorized individuals. T-Mobile's duty included a responsibility to implement processes by which it could detect a data breach of this type and magnitude in a timely manner.

508.   T-Mobile owed a duty of care to Plaintiffs and Class Members to provide data security consistent with the various statutory requirements, regulations, and other notices described above.

509.   T-Mobile's duty of care arose as a result of, among other things, the special relationship that existed between T-Mobile and its customers. T-Mobile was the only party in a position to ensure that its systems were sufficient to protect against the foreseeable risk that a data breach could occur that would result in substantial harm to consumers.

510.   T-Mobile was subject to an "independent duty" untethered to any contract between Plaintiffs and Class Members and T-Mobile.

511.   T-Mobile breached its duties, and thus was negligent, by failing to use reasonable measures to protect customers' sensitive personal information. T-Mobile's negligent acts and omissions include, but are not limited to, the following:

    a.  failure to employ systems and educate employees to protect against malware;

    b.  failure to comply with industry standards for software and server security;

    c.  failure to track and monitor access to its network and personal information;

    d.  failure to limit access to those with a valid purpose;

    e.  failure to adequately staff and fund its data security operation;

f. failure to remove, delete, or destroy highly sensitive personal information of consumers that is no longer being used for any valid business purpose;

g. failure to use due care in hiring, promoting, and supervising those responsible for its data security operations; and

h. failure to recognize a hacker was stealing personal information from its network while the Data Breach was taking place.

512.   It was foreseeable to T-Mobile that a failure to use reasonable measures to protect its customers' sensitive personal information could result in injury to consumers. Further, actual and attempted breaches of data security were reasonably foreseeable to T-Mobile given the known frequency of data breaches and various warnings from industry experts. Indeed, the Data Breach was foreseeable to T-Mobile as it suffered numerous breaches in the years preceding the Data Breach, yet it failed to rectify its deficient data security.

513.   As a direct and proximate result of T-Mobile's negligence, Plaintiffs and Class Members are entitled to all damages, including compensatory, consequential, punitive, and/or nominal damages, in an amount to be proven at trial.

514.   Plaintiffs and Class Members are also entitled to injunctive relief requiring T-Mobile to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class Members for ten (10) years.

## COUNT II

### NEGLIGENCE *PER SE*

**(On behalf of the Nationwide Class, or alternatively, the State Subclasses)**

515.   Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

516.   T-Mobile is liable for negligence *per se* for their violation of the FTC Act, 15 U.S.C. § 45.

517.   As alleged above, pursuant to the Section 5 of FTC Act, 15 U.S.C. § 45, T-Mobile had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' sensitive personal information.

518.   Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the failure to use reasonable measures to protect sensitive personal information. The FTC publications and orders described above also form part of the basis of T-Mobile's duty.

519.   T-Mobile violated Section 5 of the FTC Act by failing to use reasonable measures to protect sensitive personal information and comply with applicable industry standards, including the FTC Act, as described in detail herein. T-Mobile's conduct was particularly unreasonable given the nature and amount of sensitive personal information it collected and stored and the foreseeable consequences of a data breach, including specifically, as described herein, the damages that would result to consumers.

520.   T-Mobile's services related to the protection of sensitive personal information of its customers is activity that falls outside the provision of common carrier services.

521.   Plaintiffs and Class Members are within the class of persons that Section 5 of the FTC Act was intended to protect, because the FTC Act was expressly designed to protect consumers from "substantial injury."

522.   The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and Class Members.

523. T-Mobile had a duty to Plaintiffs and Class Members to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and Class Members' sensitive personal information.

524. T-Mobile breached its duties to Plaintiffs and Class Members under the FTC Act, by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' sensitive personal information.

525. T-Mobile's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

526. But for T-Mobile's wrongful and negligent breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members would not have been injured, or would not have been injured to as great a degree.

527. The injury suffered by Plaintiffs and Class Members was a reasonably foreseeable result of T-Mobile's breach of its duties. T-Mobile knew or should have known that the breach of its duties would cause Plaintiffs and Class Members to suffer the foreseeable harms associated with the exposure of their sensitive personal information.

528. As a direct and proximate result of T-Mobile's negligence *per se*, Plaintiffs and Class Members sustained damages as alleged herein. Plaintiffs and Class Members are entitled to all damages, including compensatory, consequential, punitive, and/or nominal damages, in an amount to be proven at trial.

529. Plaintiffs and Class Members are also entitled to injunctive relief requiring T-Mobile to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class Members for ten (10) years.

## **COUNT III**

# BREACH OF CONTRACT

## (On behalf of the Nationwide Class, or alternatively, the State Subclasses)

530.   Plaintiffs reallege and incorporate by reference all preceding allegations as if fully set forth herein.

531.   T-Mobile's Privacy Notice is an agreement between T-Mobile and individuals who provided their PII to T-Mobile, including Plaintiffs and Class Members.

532.   T-Mobile's Privacy Notice states that it applies "to personal data we have about you," meaning "data that identifies, relates to, describes, can be associated with, or could reasonably identify you as an individual." This includes "data like your name, address, or email address, as well as less obvious data like demographic data, device and usage data, call records, advertising ID, and location data[.]" It further states that the Notice applies to "all personal data we collect and use when you access or use our cell and data services, websites, apps, and other services (our 'services'), purchase and use our devices and products ('products'), visit our retail stores, or communicate or interact with us in any way."

533.   T-Mobile's Privacy Notice stated at the time of the Data Breach that T-Mobile "use[s] administrative, technical, contractual, and physical safeguards designed to protect your data while it is under our control."

534.   T-Mobile further agreed at the time of the Data Breach that it would only share data under certain enumerated circumstances, which include: "with your consent or at your direction," "with the account holder," "between T-Mobile brands and companies," "to provide benefits," "to our service providers," "to other third parties . . . for uses described in this notice or for purposes you have requested," "for identity verification and fraud prevention services," "caller ID providers," "in a business transfer or transaction" which is specified as a "corporate business transaction like an acquisition, divestiture, sale of company assets," and "for legal process and protection."

535.   None of the enumerated circumstances involve sharing Plaintiffs' or the Class Members' PII with a criminal hacker.

536.   T-Mobile's emphasized in its Privacy Policy at the time of the Data Breach that those who provide their PII to T-Mobile "trust T-Mobile to connect you to the world every day, and we're working hard to earn a place in your heart. A big part of that is maintaining your privacy. We believe you deserve transparency, education, choice, protection, and simplicity."

537.   Plaintiffs and Class Members and T-Mobile formed a contract when Plaintiffs and Class Members obtained products or services from T-Mobile, or otherwise provided PII to T-Mobile subject to its Privacy Policy.

538.   Plaintiffs and Class Members fully performed their obligations under the contracts with T-Mobile by providing their PII.

539.   T-Mobile breached its agreement with Plaintiffs and Class Members by failing to protect their PII. Specifically, it (1) failed to take reasonable steps to use safe and secure systems to protect that information; and (2) disclosed that information to unauthorized third parties, in violation of the agreement.

540.   As a direct and proximate result of T-Mobile's breach of contract, Plaintiffs and Class Members sustained damages as alleged herein. Plaintiffs and Class Members are entitled to all damages, including compensatory, consequential, punitive, and/or nominal damages, in an amount to be proven at trial.

541.   Plaintiffs and Class Members are also entitled to injunctive relief requiring T-Mobile to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class Members for ten (10) years.

## **COUNT IV**

### **BREACH OF IMPLIED CONTRACT**

### **(On behalf of the Nationwide Class, or alternatively, the State Subclasses)**

542.   Plaintiffs reallege and incorporate by reference all preceding allegations as if fully set forth herein.

543.   When Plaintiffs and Class Members provided their sensitive personal information to T-Mobile in exchange for T-Mobile's services, they entered into implied contracts with T-Mobile under which T-Mobile agreed to take reasonable steps to protect their sensitive personal information.

544.   T-Mobile solicited and invited Plaintiffs and Class Members to provide their sensitive personal information as part of T-Mobile's regular business practices. Indeed, in order to sign up for many of T-Mobiles services, T-Mobile requires customers to provide personal information sufficient for T-Mobile to check the customer's credit score to obtain T-Mobile's services. Plaintiffs and Class Members accepted T-Mobile's offers and provided their sensitive personal information T-Mobile.

545.   When entering into the implied contracts, Plaintiffs and Class Members reasonably believed and expected that T-Mobile's data security practices complied with relevant laws, regulations, and industry standards.

546.    Plaintiffs and Class Members paid money to T-Mobile to purchase T-Mobile's services. Plaintiffs and Class Members reasonably believed and expected that T-Mobile would use part of those funds to obtain adequate data security. T-Mobile failed to do so.

547.   Plaintiffs and Class Members would not have provided their sensitive personal information to T-Mobile in the absence of T-Mobile's implied promise to keep their sensitive personal information reasonably secure.

548.   Plaintiffs and Class Members fully performed their obligations under the implied contracts by paying money to T-Mobile.

549. T-Mobile breached its implied contracts with Plaintiffs and Class Members by failing to implement reasonable data security measures.

550. As a direct and proximate result of T-Mobile's breach of implied contract, Plaintiffs and Class Members sustained damages as alleged herein. Plaintiffs and Class Members are entitled to all damages, including compensatory, consequential, punitive, and/or nominal damages, in an amount to be proven at trial.

551. Plaintiffs and Class Members are also entitled to injunctive relief requiring T-Mobile to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class Members for ten (10) years.

## COUNT V

## UNJUST ENRICHMENT

### (On behalf of the Nationwide Class, or alternatively, the State Subclasses)

552. Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

553. Plaintiffs and Class Members conferred a monetary benefit upon T-Mobile in the form of monies paid for the purchase of items on T-Mobile.

554. T-Mobile appreciated or had knowledge of the benefits conferred upon it by Plaintiffs and Class Members. T-Mobile also benefited from the receipt of Plaintiffs' and Class Members' sensitive personal information as this was utilized by T-Mobile to check Plaintiffs' and Class Members' credit score, send bills, and process payments for services, among other things.

555. The monies Plaintiffs and Class Members paid to T-Mobile were supposed to be used by T-Mobile, in part, to pay for adequate data privacy infrastructure, practices, and procedures.

556. As a result of T-Mobile's conduct, Plaintiffs and Class Members suffered actual damages in an amount equal to the difference in value between what

they paid for (T-Mobile's services made with adequate data privacy and security practices and procedures), and what they actually received (T-Mobile's services without adequate data privacy and security practices and procedures).

557.    In equity and good conscience, T-Mobile should not be permitted to retain the money belonging to Plaintiffs and Class Members because T-Mobile failed to implement, or adequately implement, the data privacy and security practices and procedures that Plaintiffs and Class Members paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

558.    T-Mobile is therefore liable to Plaintiffs and Class Members for restitution or disgorgement in the amount of the benefit conferred on T-Mobile as a result of its wrongful conduct, including specifically: the value to T-Mobile of the PII that was stolen in the Data Breach; the profits T-Mobile received and is receiving from the use of that information; the amounts that T-Mobile overcharged Plaintiffs and Class Members for use of T-Mobile's products and services; and the amounts that T-Mobile should have spent to provide reasonable and adequate data security to protect Plaintiffs' and Class Members' PII.

559.    T-Mobile should be compelled to disgorge into a common fund for the benefit of Plaintiffs' and Class Members all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged herein.

## COUNT VI
## BREACH OF CONFIDENCE
**(On behalf of the Nationwide Class, or alternatively, the State Subclasses)**

560.    Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

561.    Plaintiffs and Class Members maintained a confidential relationship with T-Mobile whereby T-Mobile undertook a duty not to disclose to unauthorized

parties the PII provided by Plaintiffs and Class Members to T-Mobile to unauthorized third parties. Such PII was confidential and novel, highly personal and sensitive, and not generally known.

562.   T-Mobile knew Plaintiffs' and Class Members' PII was being disclosed in confidence and understood the confidence was to be maintained, including by expressly and implicitly agreeing to protect the confidentiality and security of the PII they collected, stored, and maintained.

563.   As a result of the Data Breach, there was an unauthorized disclosure of Plaintiffs' and Class Members' PII in violation of this understanding. The unauthorized disclosure occurred because T-Mobile failed to implement and maintain reasonable safeguards to protect the PII in its possession and failed to comply with industry-standard data security practices.

564.   Plaintiffs and Class Members were harmed by way of an unconsented disclosure of their confidential information to an unauthorized third party.

565.   But for T-Mobile's disclosure of Plaintiffs' and Class Members' PII in violation of the parties' understanding of confidence, their PII would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. T-Mobile's Data Breach was the direct and legal cause of the theft of Plaintiffs' and Class Members' PII, as well as the resulting damages.

566.   The injury and harm Plaintiffs and Class Members suffered was the reasonably foreseeable result of T-Mobile's unauthorized disclosure of Plaintiffs' and Class Members' PII. T-Mobile knew its computer systems and technologies for accepting, securing, and storing

## COUNT VII

### INVASION OF PRIVACY – INTRUSION UPON SECLUSION
### (On behalf of the Nationwide Class, or alternatively, the State Subclasses)

567.   Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

568.    Plaintiffs shared PII with T-Mobile that Plaintiffs wanted to remain private and non-public.

569.    Plaintiffs reasonably expected that the PII they shared with T-Mobile would be protected and secured against access by unauthorized parties and would not be disclosed to or obtained by unauthorized parties, or disclosed or obtained for any improper purpose.

570.    T-Mobile intentionally intruded into Plaintiffs' and Class Members' seclusion by disclosing without permission their PII to a third party who then sold their PII to other third-parties on the dark web.

571.    By failing to keep Plaintiffs' and Class Members' PII secure, and disclosing PII to unauthorized parties for unauthorized use, T-Mobile unlawfully invaded Plaintiffs' and Class Members' privacy right to seclusion by, inter alia:

a.  intruding into their private affairs in a manner that would be highly offensive to a reasonable person;

b.  invading their privacy by improperly using their PII properly obtained for specific purpose for another purpose, or disclosing it to unauthorized persons;

c.  failing to adequately secure their PII from disclosure to unauthorized persons; and

d.  enabling the disclosure of their PII without consent.

572.    The PII that was publicized during the Data Breach was highly sensitive, private, and confidential, as it included Social Security numbers and other PII.

573.    T-Mobile's intrusions into Plaintiffs' and Class Members' seclusion were substantial and would be highly offensive to a reasonable person, constituting an egregious breach of social norms.

574.    As a direct and proximate result of T-Mobile's invasions of privacy, Plaintiffs and Class Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following:

ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost value of access to their PII permitted by T-Mobile; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of T-Mobile's Data Breach; lost benefit of their bargains and overcharges for services or products; nominal and general damages; and other economic and non-economic harm.

## COUNT VIII

### VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
### RCW 19.86.010, *et. seq.*

### (On behalf of Plaintiff Atwell, the Class, and the Washington Subclass)

575. Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

576. The Washington Consumer Protection Act ("CPA") protects consumers by declaring unlawful all unfair methods of competition and unfair or deceptive acts or practices in commercial markets for goods and services. RCW 19.86.020.

577. As alleged herein, T-Mobile has consistently maintained subpar security and privacy measures for the use and retention of its consumers' sensitive personal information. These practices were both unfair and deceptive.

578. Specifically, T-Mobile engaged in unfair acts and practices in violation of the CPA by failing to implement and maintain reasonable security measures to protect consumers' sensitive personal information, including its failure to remedy the previous deficiencies in its systems and servers that had caused multiple, other data breaches.

579. T-Mobile has statutory, regulatory, and common law obligations to prevent the foreseeable risk of harm to others, including Plaintiff Atwell, the Class, and members of the Washington Subclass, arising out of their retention of consumers' sensitive personal information.

580. At all times it was foreseeable that T-Mobile's failure to adopt reasonable security measures to protect consumers' sensitive personal information would cause harm to Plaintiff Atwell, the Class, and members of the Washington Subclass and placed Plaintiff Atwell, the Class, and members of the Washington Subclass at a substantial risk of fraud and identity theft.

581. T-Mobile's failure to implement and maintain reasonable security measures to protect consumers' sensitive personal information and failure to comply with its statutory, regulatory, and common law obligations were likely to, and did, cause substantial injury to Plaintiffs and the Class. T-Mobile's consistent failure to remedy its deficient security measures serve no countervailing benefit to consumers or competition.

582. T-Mobile had sole responsibility for securing its customers' sensitive personal information and exclusive knowledge of its deficient security measures. There was no way for Plaintiffs or the Class to know about T-Mobile's severely deficient security practices or to avoid their injuries.

583. Further, T-Mobile's failure to inform Plaintiff Atwell, the Class, and members of the Washington Subclass of its inadequate security practices—which

were exclusively known by T-Mobile—and its failure to comply with its obligations to adopt reasonable security measures constitute deceptive acts and practices in violation of the CPA. By offering services to Plaintiff Atwell, the Class, and members of the Washington Subclass that would require handing over sensitive personal information, Plaintiff Atwell, the Class, and members of the Washington Subclass reasonably believed that T-Mobile would have sufficient security measures in place to protect this information, including sufficient practices and policies for the use, retention, and disclosure of this sensitive personal information to protect against the foreseeable threat of a data breach and resulting harm. In light of the foreseeable risk of harm to consumers, Plaintiffs and Class Members reasonably believed that T-Mobile would use reasonable practices to protect consumers' sensitive personal information. T-Mobile had a duty to disclose that its data security measures were insufficient to protect consumers' sensitive personal information but failed to do so. T-Mobile's acts, omissions, and practices were likely to and did mislead Plaintiff Atwell, the Class, and members of the Washington Subclass.

584.   As a direct and proximate result of T-Mobile's violations of the Washington CPA, Plaintiff Atwell, the Class, and members of the Washington Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including loss of the benefit of their bargain with T-Mobile as they would not have paid T-Mobile for goods and services or would have paid less for such goods and services but for T-Mobile's violations alleged herein; losses from fraud and identity theft; costs for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their sensitive personal information; and an increased, imminent risk of fraud and identity theft.

585.   As a result, Plaintiff Atwell, the Class, and members of the Washington Subclass seek all monetary and non-monetary relief allowed by law, including

compensatory damages; statutory damages; restitution; disgorgement; punitive damages; injunctive relief; and reasonable attorneys' fees and costs.

## COUNT IX

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (On behalf of Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, Plaintiff Wilson and the California Subclass)

586. Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, and Plaintiff Wilson, on behalf of the California Subclass, re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

587. Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, Plaintiff Wilson and members of the California Subclass are residents of California.

588. T-Mobile is a "person" as defined by Cal. Bus. & Prof. Code §17201.

589. T-Mobile violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

590. T-Mobile's unlawful, unfair, and deceptive acts and practices include:

    a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, and Plaintiff Wilson's and members of the California Subclass' sensitive personal information, directly and proximately causing the Data Breach, and omitting, suppressing, and concealing the material fact of that failure;

b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following well-publicized cybersecurity incidents, directly and proximate causing the Data Breach, and omitting, suppressing, and concealing the material fact of that failure;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, and Plaintiff Wilson's and members of the California Subclass' sensitive personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Data Breach and omitting, suppressing, and concealing the material fact of that failure;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, and Plaintiff Wilson's and members of the California Subclass' sensitive personal information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, and Plaintiff Wilson's and members of the California Subclass' sensitive personal

information, including duties imposed by the FTC Act, 15
U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it
did not reasonably or adequately secure Plaintiff Shoemaker,
Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff
Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell,
and Plaintiff Wilson's and members of the California Subclass'
sensitive personal information; and

g. Omitting, suppressing, and concealing the material fact that it
did not comply with common law and statutory duties
pertaining to the security and privacy of Plaintiff Shoemaker,
Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff
Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell,
and Plaintiff Wilson's and members of the California Subclass'
sensitive personal information, including duties imposed by the
FTC Act, 15 U.S.C. § 45.

591.   T-Mobile's representations and omissions were material because they
were likely to deceive reasonable consumers about the adequacy of T-Mobile's
data security and ability to protect the confidentiality of consumers' sensitive
personal information.

592.   As a direct and proximate result of T-Mobile's unfair, unlawful, and
fraudulent acts and practices, Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff
Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez,
Plaintiff Mitchell and Plaintiff Wilson's and members of the California Subclass'
were injured and lost money or property, including the premiums and/or price
received by T-Mobile for its goods and services; the loss of the benefit of their
bargain with T-Mobile, as they would not have paid T-Mobile for goods and
services or would have paid less for such goods and services but for T-Mobile's
violations alleged herein; losses from fraud and identity theft; costs for credit

monitoring and identity protection services; wasted time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their sensitive personal information; and an increased, imminent risk of fraud and identity theft.

593.   Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, Plaintiff Wilson and members of the California Subclass seek all monetary and non-monetary relief allowed by law, including compensatory damages; restitution; disgorgement; punitive damages; injunctive relief; and reasonable attorneys' fees and costs.

## COUNT X

## VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT

## Cal. Civ. Code §§ 1750, *et seq.*

**(On behalf of Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, Plaintiff Wilson and the California Subclass)**

594.   Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, Plaintiff Wilson and the members of the California Subclass re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

595.   Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, Plaintiff Wilson and members of the California Subclass are residents of California.

596.   The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA") is a comprehensive statutory scheme to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses

providing goods, property or services to consumers primarily for personal, family, or household use.

597.   T-Mobile is a "person" as defined by Civil Code §§ 1761(c) and 1770 and has provided "services" as defined by Civil Code §§ 1761(b) and 1770.

598.   Civil Code section 1770, subdivision (a)(5) prohibits one who is involved in a transaction from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."

599.   Civil Code section 1770, subdivision (a)(7) prohibits one who is involved in a transaction from "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another."

600.   Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, Plaintiff Wilson and each member of the California Subclass are "consumers" as defined by Civil Code §§ 1761(d) and 1770 and have engaged in a "transaction" as defined by Civil Code §§ 1761(e) and 1770.

601.   T-Mobile's acts and practices were intended to and did result in the sale of products and services to Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, Plaintiff Wilson and the members of the California Subclass in violation of Civil Code § 1770, including, but not limited to, the following:

        a. misrepresenting that its services would include reasonable security measures designed to protect the privacy and confidentiality of Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, and Plaintiff Wilson's and members of the California Subclass' sensitive personal information;

b.  misrepresenting that it would supply its services in conformity with its common law and statutory duties pertaining to the security and privacy of Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, and Plaintiff Wilson's and members of the California Subclass' sensitive personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

c.  omitting, suppressing, and concealing the material fact that in connection with providing its services it did not reasonably or adequately secure Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, and Plaintiff Wilson's and members of the California Subclass' sensitive personal information; and

d.  omitting, suppressing, and concealing the material fact that in connection with providing its services it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell and Plaintiff Wilson's and members of the California Subclass' sensitive personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

602.   T-Mobile's representations and omissions were material because they were likely to and did deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of customers' sensitive personal information.

603.    Had T-Mobile disclosed to Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, Plaintiff Wilson and members of the California Subclass that its data systems were not secure and, thus, vulnerable to attack, T-Mobile would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, T-Mobile received, maintained, and compiled Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, Plaintiff Shoemaker, and Plaintiff Wilson's and members of the California Subclass' sensitive personal information as part of the services T-Mobile provided and for which Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, Plaintiff Shoemaker, Plaintiff Wilson and members of the California Subclass paid without advising Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, Plaintiff Shoemaker, Plaintiff Wilson and members of the California Subclass that T-Mobile's data security practices were insufficient to maintain the safety and confidentiality of Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, Plaintiff Shoemaker, Plaintiff Wilson and members of the California Subclass' sensitive personal information. Accordingly, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, Plaintiff Shoemaker, Plaintiff Wilson and the members of the California Subclass acted reasonably in relying on T-Mobile's misrepresentations and omissions, the truth of which they could not have discovered.

604.    As a direct and proximate result of T-Mobile's violations of California Civil Code § 1770, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, Plaintiff Shoemaker, Plaintiff Wilson and members of the California Subclass have suffered and will

continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including loss of the benefit of their bargain with T-Mobile as they would not have paid T-Mobile for goods and services or would have paid less for such goods and services but for T-Mobile's violations alleged herein; losses from fraud and identity theft; costs for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their sensitive personal information; and an increased, imminent risk of fraud and identity theft.

605.   Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, Plaintiff Shoemaker, and Plaintiff Wilson, individually and on behalf of the California Subclass, seek an injunction requiring Defendant to adopt reasonable and sufficient data security measures designed to protect and secure Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, Plaintiff Shoemaker, and Plaintiff Wilson's and the members of the California Subclass' sensitive personal information.

606.   Pursuant to Cal. Civ. Code § 1782(a), Plaintiffs served Defendants with notice of their alleged violations of the CLRA by certified mail return receipt requested. If, within thirty days after the date of such notification, Defendants fail to provide appropriate relief for their violations of the CLRA, Plaintiffs will amend this Complaint to seek monetary damages.

607.   In accordance with Cal. Civ. Code § 1780(d), Plaintiffs CLRA venue declarations are attached hereto at Exhibit A.

## COUNT XI

### VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT
### Cal. Civ. Code § 1798.100, *et seq.*

**(On behalf of Plaintiff Shoemaker,Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, Plaintiff Wilson and the California Subclass)**

608. Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, and Plaintiff Wilson, individually and on behalf of the California Subclass re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

609. California's Consumer Privacy Act ("CCPA") was recently enacted to protect consumers' personal information from collection and use by businesses without appropriate notice and consent.

610. Cal. Civ. Code § 1798.150(a)(1) provides that "any consumer whose nonencrypted and nonredacted personal information . . . is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information" may commence a civil action for any of the following:

    a. Damages, not less than $100 and not greater than $750 per consumer per incident, or actual damages, whichever is greater;

    b. Injunctive or declaratory relief; and

    c. Any other relief the Court deems proper.

611. Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, Plaintiff Wilson and members of the California Subclass provided T-Mobile with nonencrypted and nonredacted personal information, as defined in Cal. Civ. Code § 1798.81.5(d).

612. As alleged herein, Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell and Plaintiff Wilson's and members of the California Subclass' nonencrypted and nonredacted personal information was subject to unauthorized access, exfiltration, theft, and disclosure, when it was stolen by cyber criminals as a result of the Data Breach caused by T-Mobile.

613.   The unauthorized access, exfiltration, theft, and disclosure, of Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell and Plaintiff Wilson's and members of the California Subclass' sensitive personal information was a direct result of T-Mobile's failure to implement and maintain reasonable security procedures appropriate to the nature of the information they stored and collected.

614.   As a direct and proximate result of T-Mobile's violations of the CCPA, Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, Plaintiff Wilson and members of the California Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including loss of the benefit of their bargain with T-Mobile, as they would not have paid T-Mobile for goods and services or would have paid less for such goods and services but for T-Mobile's violations alleged herein; losses from fraud and identity theft; costs for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their personal information; and an increased, imminent risk of fraud and identity theft.

615.   Plaintiff Shoemaker, Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, and Plaintiff Wilson, individually and on behalf of the California Subclass, seek an injunction requiring Defendant to adopt reasonable and sufficient data security measures designed to protect and secure Plaintiff Bodacoloffi, Plaintiff Dawson, Plaintiff Egeler, Plaintiff Gliko, Plaintiff Haro, Plaintiff S. Hernandez, Plaintiff Mitchell, Plaintiff Shoemaker, and Plaintiff Wilson's and the members of the California Subclass' sensitive personal information, as well as actual damages on behalf themselves and the Subclass.

616.   Pursuant to Cal. Civ. Code § 1798.150(b), Plaintiffs served Defendants with notice of the specific provisions of the CCPA Defendants have violated by

certified mail return receipt requested. If, within thirty days after the date of such notification, Defendants fail to provide appropriate relief for their violations of the CCPA, Plaintiffs will amend this Complaint to seek statutory damages on behalf of themselves and the Subclass.

## COUNT XII

### CONNECTICUT UNFAIR TRADE PRACTICES ACT

### Conn. Gen. Stat. Ann. §§ 42-110a *et seq.*

### (On behalf of Plaintiff Arroyo, Plaintiff Graham, Plaintiff Lopez and the Connecticut Subclass)

617.    Plaintiff Arroyo, Plaintiff Graham, and Plaintiff Lopez, individually, and on behalf of the Connecticut Subclass, repeats and realleges all allegations as if fully set forth herein.

618.    T-Mobile is a "person" as defined by Conn. Gen. Stat. Ann. § 42-110(a)(3).

619.    Plaintiff Arroyo, Plaintiff Graham, Plaintiff Lopez and members of the Connecticut Subclass are actual or potential consumers of Recalled Devices.

620.    At all times mentioned herein, T-Mobile engages in "trade" or "commerce" in Connecticut as defined by Conn. Gen. Stat. Ann. § 42-110(a)(4), in that they engaged in the "advertising," "sale," and "distribution" of any "goods," "services," "property," "articles," "commodities," or "things of value" in Connecticut.

621.    The Connecticut Unfair Trade Practices Act (CUTPA) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." C.G.S.A. § 42-110b(a).

622.    For the reasons discussed herein, T-Mobile violated CUTPA by engaging in the herein described deceptive or unfair acts or practices proscribed by § 42-110a *et seq.* T-Mobile's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead Members of

the public, including consumers acting reasonably under the circumstances, to their detriment.

623.   T-Mobile engaged in deceptive trade practices in the course of its business, in violation of CUTPA, including:

a. Making a false representation as to the characteristics of products and services;

b. Representing that services are of a particular standard, quality, or grade, though T-Mobile knew or should have known that there were or another;

c. Advertising services with intent not to sell them as advertised;

d. Employing "bait and switch" advertising, which is advertising accompanied by an effort to sell goods, services, or property other than those advertised or on terms other than those advertised; and

e. Failing to disclose material information concerning its services which was known at the time of an advertisement or sale when the failure to disclose the information was intended to induce the consumer to enter into the transaction.

624.   T-Mobile's deceptive trade practices include:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Arroyo, Plaintiff Graham, and Plaintiff Lopez's and members of the Connecticut Subclass' PII, which was a direct and proximate cause of the Data Breach;

b. Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Arroyo, Plaintiff Graham, and Plaintiff Lopez's and members of the Connecticut Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d. Misrepresenting that they would protect the privacy and confidentiality of Plaintiff Arroyo, Plaintiff Graham, and Plaintiff Lopez's and members of the Subclass' PII, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Arroyo, Plaintiff Graham, and Plaintiff Lopez's and members of the Connecticut Subclass ' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff Arroyo, Plaintiff Graham, and Plaintiff Lopez's and members of the Connecticut Subclass' PII; and

g. Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Arroyo, Plaintiff Graham, and Plaintiff Lopez's and members of the Connecticut Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

625.   T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

626.   T-Mobile intended to mislead Plaintiff Arroyo, Plaintiff Graham, Plaintiff Lopez and members of the Connecticut Subclass and induce them to rely on its misrepresentations and omissions.

627.   Had T-Mobile disclosed to Plaintiff Arroyo, Plaintiff Graham, Plaintiff Lopez and the Connecticut Subclass that its data systems were not secure and, thus, vulnerable to attack, T-Mobile would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. T-Mobile was trusted with sensitive and valuable PII regarding millions of consumers, including Plaintiff Arroyo, Plaintiff Graham, Plaintiff Lopez and the Connecticut Subclass. T-Mobile accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff Arroyo, Plaintiff Graham, Plaintiff Lopez and the members of the Connecticut Subclass acted reasonably in relying on T-Mobile's misrepresentations and omissions, the truth of which they could not have discovered.

628.   T-Mobile acted intentionally, knowingly, and maliciously to violate CUTPA, and recklessly disregarded Plaintiff Arroyo, Plaintiff Graham, and Plaintiff Lopez's and members of the Connecticut Subclass' rights. T-Mobile's numerous past data breaches put it on notice that its security and privacy protections were inadequate.

629.   As a direct and proximate result of T-Mobile's deceptive trade practices, Plaintiff Arroyo, Plaintiff Graham, Plaintiff Lopez, and members of the Connecticut Subclass suffered injuries to their legally protected interests, including their legally protected interest in the confidentiality and privacy of their PII, monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss

of the value of access to their PII; and the value of identity protection services made necessary by the Data Breach.

630.   T-Mobile's deceptive trade practices significantly impact the public, because many Members of the public are actual or potential consumers of T-Mobile's services and the Data Breach affected millions of Americans, which include Members of the Connecticut Subclass.

631.   Plaintiff Arroyo, Plaintiff Graham, Plaintiff Lopez and the Connecticut Subclass seek relief for the injuries they have suffered as a result of T-Mobile's unfair and deceptive acts and practices, as provided by C.G.S.A. § 42-110g and applicable law.

## <u>COUNT XIII</u>

### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, Fla. Stat. §§ 501.201, *et seq.*
### (On behalf of Plaintiff Berggren, Plaintiff Evola, Plaintiff Hosfeld, Plaintiff Kruse, Plaintiff Maya, Plaintiff Pry and the Florida Subclass)

632.   Plaintiff Berggren, Plaintiff Evola, Plaintiff Hosfeld, Plaintiff Kruse, Plaintiff Maya, and Plaintiff Pry, individually and on behalf of the Florida Subclass, repeat and realleges the allegations above as if fully set forth herein.

633.   Plaintiff Berggren, Plaintiff Evola, Plaintiff Hosfeld, Plaintiff Kruse and Plaintiff Maya, Plaintiff Pry and members of the Florida Subclass are "consumers" as defined by Fla. Stat. § 501.203.

634.   T-Mobile advertised, offered, or sold goods or services in Florida and engaged in trade or commerce directly or indirectly affecting the people of Florida.

635.   T-Mobile engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1), including:

     a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Berggren, Plaintiff Evola,

Plaintiff Hosfeld, Plaintiff Kruse, Plaintiff Maya, and Plaintiff Pry's and members of the Florida Subclass' PII, which was a direct and proximate cause of the Data Breach;

b. Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Berggren, Plaintiff Evola, Plaintiff Hosfeld, Plaintiff Kruse Plaintiff Maya, and Plaintiff Pry's and members of the Florida Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Florida's data security statute, F.S.A. § 501.171(2), which was a direct and proximate cause of the Data Breach;

d. Misrepresenting that they would protect the privacy and confidentiality of Plaintiff Berggren, Plaintiff Evola, Plaintiff Hosfeld, Plaintiff Kruse, Plaintiff Maya, and Plaintiff Pry's and members of the Florida Subclass' PII, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Berggren, Plaintiff Evola, Plaintiff Hosfeld, Plaintiff Kruse, Plaintiff Maya, and Plaintiff Pry's and members of the Florida Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Florida's data security statute, F.S.A. § 501.171(2);

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff Berggren, Plaintiff Evola, Plaintiff Hosfeld, Plaintiff Kruse, Plaintiff

Maya, and Plaintiff Pry's and members of the Florida Subclass' PII; and

g. Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Berggren, Plaintiff Evola, Plaintiff Hosfeld, Plaintiff Kruse, Plaintiff Maya, and Plaintiff Pry's and members of the Florida Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Florida's data security statute, F.S.A. § 501.171(2).

636.   T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

637.   Had T-Mobile disclosed to Plaintiffs and Subclass Members that its data systems were not secure and, thus, vulnerable to attack, T-Mobile would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. T-Mobile was trusted with sensitive and valuable PII regarding millions of consumers, including Plaintiff and the Subclass. T-Mobile accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff and the Subclass Members acted reasonably in relying on T-Mobile's misrepresentations and omissions, the truth of which they could not have discovered.

638.   As a direct and proximate result of T-Mobile's unconscionable, unfair, and deceptive acts and practices, Plaintiff Berggren, Plaintiff Evola, Plaintiff Hosfeld, Plaintiff Kruse, Plaintiff Maya, Plaintiff Pry, and members of the Florida Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time  and expenses related to monitoring their financial accounts for fraudulent activity; an

increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss of the value of access to their PII; and the value of identity protection services made necessary by the Breach.

639.   Plaintiff Berggren, Plaintiff Evola, Plaintiff Hosfeld, Plaintiff Kruse, Plaintiff Maya, Plaintiff Pry and members of the Florida Subclass seek all monetary and non-monetary relief allowed by law, including actual damages under Fla. Stat. § 501.211; declaratory and injunctive relief; reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

## COUNT XIV
## GEORGIA FAIR BUSINESS PRACTICES ACT,
### O.C.G.A. §§ 10-1-399, *et seq.*
### (On behalf of Plaintiff Johnson and the Georgia Subclass)

640.   Plaintiff Johnson individually and on behalf of the Georgia Subclass, repeats and realleges the allegations above as if fully set forth herein.

641.   T-Mobile, Plaintiff Johnson, and each member of the Georgia Subclass are "persons" within the meaning of the Georgia Fair Business Practices Act ("GFBPA"). O.C.G.A. § 10-1- 399(a).

642.   T-Mobile is engaged in, and its acts and omissions affect, trade and commerce under O.C.G.A. § 10-1-392(28).

643.   T-Mobile is engaged in "consumer acts or practices," which are defined as "acts or practices intended to encourage consumer transactions" under O.C.G.A. § 10-1-392(7).

644.   T-Mobile engaged in "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" in violation of O.C.G.A. § 10-1-393(a). Those acts and practices include those expressly declared unlawful by O.C.G.A. § 10-1-393(b), such as:

    **a.** Representing that goods or services have approval, characteristics, uses, or benefits that they do not have;

    **b.** Representing that goods or services are of a particular standard, quality, or grade if they are of another; and

    **c.** Advertising goods or services with intent not to sell them as advertised.

645.   T-Mobile also engaged in the unfair and deceptive acts and practices described below that, while not expressly declared unlawful by O.C.G.A. § 10-1-393(b), are prohibited by O.C.G.A. § 10-1-393(a).

646.   In the course of T-Mobile's business, T-Mobile engaged in unfair acts and practices prohibited by O.C.G.A. § 10-1-393(a), including:

    **a.** Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Johnson's and members of the Georgia Subclass' PII, which was a direct and proximate cause of the Data Breach;

    **b.** Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

    **c.** Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Johnson's and members of the Georgia Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

647.   In the course of T-Mobile's business, T-Mobile also engaged in deceptive acts and practices prohibited by O.C.G.A. § 10-1-393(a), including:

    **a.** Misrepresenting that they would protect the privacy and confidentiality of Plaintiff Johnson's and members of the

Georgia Subclass' PII, including by implementing and maintaining reasonable security measures;

**b.** Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Johnson's and members of the Georgia Subclass PII, including duties imposed by the FTC Act, 15 U.S.C. § 45;

**c.** Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff Johnson's and members of the Georgia Subclass' PII; and

**d.** Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Johnson's and members of the Georgia Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

648.   The misrepresentations and omissions described in the preceding paragraph were material and made intentionally and knowingly with the intent that Plaintiff Johnson and members of the Georgia Subclass rely upon them in connection with providing to T-Mobile their extremely sensitive and valuable PII.

649.   T-Mobile knew of the inadequate security controls and vulnerabilities in its data security systems storing Plaintiff Johnson's and members of the Georgia Subclass' sensitive and valuable PII, but concealed all of these security failings.

650.   T-Mobile's deceptive acts and practices were likely to and did in fact deceive the public at large and reasonable consumers, including Plaintiff Johnson and members of the Georgia Subclass, regarding the security and safety of the PII in its care, including the PII of Plaintiff Johnson and members of the Georgia Subclass.

651.   T-Mobile knew or should have known that by collecting, selling, and trafficking in PII, Plaintiff Johnson and members of the Georgia Subclass would

reasonably rely upon and assume T-Mobile's data systems were secure unless T-Mobile otherwise informed them.

652.    Plaintiff Johnson and members of the Georgia Subclass had no effective means on their own to discover the truth. T-Mobile did not afford Plaintiff Johnson and members of the Georgia Subclass any opportunity to inspect T-Mobile's data security, learn that it was inadequate and non-compliant with legal requirements, or otherwise ascertain the truthfulness of T-Mobile's representations and omissions regarding T-Mobile's ability to protect data and comply with the law.

653.    Plaintiff Johnson and members of the Georgia Subclass relied to their detriment upon T-Mobile's representations and omissions regarding data security, including T-Mobile's failure to alert customers that its privacy and security protections were inadequate and insecure and thus were vulnerable to attack.

654.    Had T-Mobile disclosed to Plaintiff Johnson and members of the Georgia Subclass that its data systems were not secure and, thus, vulnerable to attack, T-Mobile would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. T-Mobile was trusted with sensitive and valuable PII regarding millions of consumers, including Plaintiff Johnson and members of the Georgia Subclass. T-Mobile accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff Johnson and members of the Georgia Subclass acted reasonably in relying on T-Mobile's misrepresentations and omissions, the truth of which they could not have discovered.

655.    T-Mobile acted intentionally, knowingly, and maliciously to violate the GFBPA, and recklessly disregarded Plaintiff Johnson and members of the Georgia Subclass' rights. 433. T-Mobile's violations present a continuing risk to Plaintiff Johnson and members of the Georgia Subclass, as well as to the general public.

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

656.    T-Mobile's unlawful acts and practices complained of herein affect the consumer marketplace and the public interest, including the millions of U.S residents and many Georgians affected by the T-Mobile Data Breach.

657.    But for T-Mobile's violations of the GFBPA described above, the T-Mobile Data Breach would not have occurred.

658.    As a direct and proximate result of T-Mobile's violations of the GFBPA, Plaintiff Johnson and members of the Georgia Subclass have suffered injury-in-fact, monetary, and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss of the value of access to their PII; and the value of identity protection services made necessary by the Breach.

659.    The GFBPA permits any person who suffers injury or damages as a result of the violation of its provisions to bring an action against the person or persons engaged in such violations. O.C.G.A. § 10-1-399(a).

660.    Plaintiff Johnson bring this action on behalf of themselves and members of the Georgia Subclass for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers and the public at large to make informed decisions related to the security of their sensitive PII, and to protect the public from T-Mobile's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices.

661.    Plaintiff Johnson and members of the Georgia Subclass are entitled to a judgment against T-Mobile for actual and consequential damages; general, nominal, exemplary, and trebled damages and attorneys' fees pursuant to the GFBPA; costs; and such other further relief as the Court deems just and proper.

## COUNT XV
## GEORGIA UNIFORM DECEPTIVE PRACTICES ACT,

## O.C.G.A. §§ 10-1-370, *et seq.*
## (On behalf of Plaintiff Johnson and the Georgia Subclass)

662.   Plaintiff Johnson individually and on behalf of the Georgia Subclass, repeats and realleges the allegations above as if fully set forth herein.

663.   T-Mobile, Plaintiff Johnson, and each member of the Georgia Subclass are "persons" within the meaning of § 10-1-371(5) of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA").

664.   T-Mobile engaged in deceptive trade practices in the conduct of its business, in violation of O.C.G.A. § 10-1-372(a), including:

   **a.**   Representing that goods or services have characteristics that they do not have;

   **b.**   Representing that goods or services are of a particular standard, quality, or grade if they are of another;

   **c.**   Advertising goods or services with intent not to sell them as advertised; and

   **d.**   Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

665.   T-Mobile's deceptive acts and practices include:

   **a.**   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Johnson's and members of the Georgia Subclass' PII, which was a direct and proximate cause of the Data Breach;

   **b.**   Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

   **c.**   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Johnson's and

members of the Georgia Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

**d.** Misrepresenting that they would protect the privacy and confidentiality of Plaintiff Johnson's and members of the Georgia Subclass' PII, including by implementing and maintaining reasonable security measures;

**e.** Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Johnson's and members of the Georgia Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45;

**f.** Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff Johnson's and members of the Georgia Subclass' PII; and

**g.** Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Johnson's and members of the Georgia Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

666. T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

667. T-Mobile intended to mislead Plaintiff Johnson's and members of the Georgia Subclass and induce them to rely on its misrepresentations and omissions.

668. In the course of its business, T-Mobile engaged in activities with a tendency or capacity to deceive.

669. T-Mobile acted intentionally, knowingly, and maliciously to violate Georgia's Uniform Deceptive Trade Practices Act, and recklessly disregarded Plaintiff Johnson's and members of the Georgia Subclass' rights. T-Mobile's

numerous past data breaches put it on notice that its security and privacy protections were inadequate.

670.   Had T-Mobile disclosed to Plaintiff Johnson and members of the Georgia Subclass that its data systems were not secure and, thus, vulnerable to attack, T-Mobile would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. T-Mobile was trusted with sensitive and valuable PII regarding millions of consumers, including Plaintiff Johnson and members of the Georgia Subclass. T-Mobile accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff Johnson and members of the Georgia Subclass acted reasonably in relying on T-Mobile's misrepresentations and omissions, the truth of which they could not have discovered.

671.   As a direct and proximate result of T-Mobile's deceptive trade practices, Plaintiff Johnson's and members of the Georgia Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss of the value of access to their PII; and the value of identity protection services made necessary by the Breach.

672.   Plaintiff Johnson's and members of the Georgia Subclass seek all relief allowed by law, including injunctive relief, and reasonable attorneys' fees and costs, under O.C.G.A. § 10-1-373.

## COUNT XVI

### ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT, 815l. Comp. Stat. §§ 510/2, *et seq.*

**(On behalf of Plaintiff Knutson, Plaintiff Padilla, and the Illinois Subclass)**

673.   Plaintiff Knutson and Plaintiff Padilla, individually and on behalf of the Illinois Subclass, repeats and realleges all preceding allegations as if fully set forth herein.

674.   T-Mobile is a "person" as defined by 815 Ill. Comp. Stat. §§ 510/1(5).

675.   T-Mobile engaged in deceptive trade practices in the conduct of its business, in violation of 815 Ill. Comp. Stat. §§ 510/2(a), including:

    a. Representing that goods or services have characteristics that they do not have;

    b. Representing that goods or services are of a particular standard, quality, or grade if they are of another;

    c. Advertising goods or services with intent not to sell them as advertised; and

    d. Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

676.   T-Mobile's deceptive acts and practices include:

    a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Knutson and Plaintiff Padilla's and members of the Illinois Subclass' PII, which was a direct and proximate cause of the Data Breach;

    b. Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

    c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Knutson and Plaintiff Padilla's and members of the Illinois Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, Illinois laws regulating the use and disclosure of Social Security

Numbers, 815 Ill. Comp. Stat § 505/2RR, and the Illinois
Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. §
510/2(a), which was a direct and proximate cause of the Data
Breach;

d.  Misrepresenting that they would protect the privacy and
confidentiality of Plaintiff Knutson and Plaintiff Padilla's and
members of the Illinois Subclass' PII, including by
implementing and maintaining reasonable security measures;

e.  Misrepresenting that they would comply with common law and
statutory duties pertaining to the security and privacy of
Plaintiff Knutson and Plaintiff Padilla's and members of the
Illinois Subclass' PII, including duties imposed by the FTC Act,
15 U.S.C. § 45, Illinois laws regulating the use and disclosure
of Social Security Numbers, 815 Ill. Comp. Stat § 505/2RR,
and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill.
Comp. Stat. § 510/2(a);

f.  Omitting, suppressing, and concealing the material fact that it
did not reasonably or adequately secure Plaintiff Knutson and
Plaintiff Padilla's and members of the Illinois Subclass' PII;
and

g.  Omitting, suppressing, and concealing the material fact that
they did not comply with common law and statutory duties
pertaining to the security and privacy of Plaintiff Knutson and
Plaintiff Padilla's and members of the Illinois Subclass' PII,
including duties imposed by the FTC Act, 15 U.S.C. § 45,
Illinois laws regulating the use and disclosure of Social Security
Numbers, 815 Ill. Comp. Stat § 505/2RR, and the Illinois
Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. §
510/2(a).

677.   T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

678.   The above unfair and deceptive practices and acts by T-Mobile were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff Knutson, Plaintiff Padilla and members of the Illinois Subclass that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

679.   As a direct and proximate result of T-Mobile's unfair, unlawful, and deceptive trade practices, Plaintiff Knutson, Plaintiff Padilla and members of the Illinois Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss of the value of access to their PII; and the value of identity protection services made necessary by the Breach.

680.   Plaintiff Knutson, Plaintiff Padilla and members of the Illinois Subclass seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees.

## COUNT XVII

### MASSACHUSETTS CONSUMER PROTECTION ACT,
### Mass. Gen. Laws Ann. Ch. 93A, §§ 1, *et seq.*
### (On behalf of Plaintiff Keller, Plaintiff Osorio Plaintiff Schettini and the
### Massachusetts Subclass)

681.   Plaintiff Keller, Plaintiff Osorio and Plaintiff Schettini, individually and on behalf of the Massachusetts Subclass repeats and realleges all allegations as if fully set forth herein.

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*
122

682.    T-Mobile, Plaintiff Keller, Plaintiff Osorio, Plaintiff Schettini and each member of the Massachusetts Subclass are "persons" as meant by Mass. Gen. Laws. Ann. Ch. 93A, § 1(a).

683.    T-Mobile operates in "trade or commerce" as meant by Mass. Gen. Laws Ann. Ch. 93A, § 1(b).

684.    T-Mobile advertised, offered, or sold goods or services in Massachusetts and engaged in trade or commerce directly or indirectly affecting the people of Massachusetts, as defined by Mass. Gen. Laws Ann. Ch. 93A, § 1(b).

685.    T-Mobile engaged in unfair methods of competition and unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of Mass. Gen. Laws Ann. Ch. 93A, § 2(a), including:

    a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Keller, Plaintiff Osorio and Plaintiff Schettini's and members of the Massachusetts Subclass' PII, which was a direct and proximate cause of the Data Breach;

    b.  Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

    c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Keller, Plaintiff Osorio and Plaintiff Schettini's and members of the Massachusetts Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Massachusetts Data Security statute and its implementing regulations, Mass. Gen. Laws Ann. Ch. 93H, § 2; 201 Mass. Code Regs. 17.01-05, which was a direct and proximate cause of the Data Breach;

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

d.  Misrepresenting that they would protect the privacy and
confidentiality of Plaintiff Keller, Plaintiff Osorio and Plaintiff
Schettini's and members of the Massachusetts Subclass' PII,
including by implementing and maintaining reasonable security
measures;

e.  Misrepresenting that they would comply with common law and
statutory duties pertaining to the security and privacy of
Plaintiff Keller, Plaintiff Osorio and Plaintiff Schettini's and
members of the Massachusetts Subclass' PII, including duties
imposed by the FTC Act, 15 U.S.C. § 45, and the
Massachusetts Data Security statute and its implementing
regulations, Mass. Gen. Laws Ann. Ch. 93H, § 2; 201 Mass.
Code Regs. 17.01-05;

f.  Omitting, suppressing, and concealing the material fact that it
did not reasonably or adequately secure Plaintiff Keller,
Plaintiff Osorio and Plaintiff Schettini's and members of the
Massachusetts Subclass' PII; and

g.  Omitting, suppressing, and concealing the material fact that
they did not comply with common law and statutory duties
pertaining to the security and privacy of Plaintiff Keller,
Plaintiff Osorio and Plaintiff Schettini's and members of the
Massachusetts Subclass' PII, including duties imposed by the
FTC Act, 15 U.S.C. § 45, and the Massachusetts Data Security
statute and its implementing regulations, Mass. Gen. Laws Ann.
Ch. 93H, § 2; 201 Mass. Code Regs. 17.01-05.

686.   T-Mobile's acts and practices were "unfair" because they fall within
the penumbra of common law, statutory, and established concepts of unfairness,
given that T-Mobile solely held the true facts about its inadequate security for PII,

which Plaintiff Keller, Plaintiff Osorio, Plaintiff Schettini and the Massachusetts Subclass could not independently discover.

687.    Consumers could not have reasonably avoided injury because T-Mobile's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers about the inadequacy of its data security, T-Mobile created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

688.    T-Mobile's inadequate data security had no countervailing benefit to consumers or to competition.

689.    T-Mobile intended to mislead Plaintiff Keller, Plaintiff Osorio, Plaintiff Schettini and the Massachusetts Subclass and induce them to rely on its misrepresentations and omissions. T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

690.    T-Mobile acted intentionally, knowingly, and maliciously to violate Massachusetts's Consumer Protection Act, and recklessly disregarded Plaintiff Keller, Plaintiff Osorio, Plaintiff Schettini's and members of the Massachusetts Subclass' rights.

691.    As a direct and proximate result of T-Mobile's unfair and deceptive conduct, Plaintiff Keller, Plaintiff Osorio, Plaintiff Schettini and members of the Massachusetts Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss of the value of access to their

PII; and the value of identity protection services made necessary by the Data Breach.

692.    Plaintiff Keller, Plaintiff Osorio, Plaintiff Schettini and members of the Massachusetts Subclass seek all monetary and non-monetary relief allowed by law, including actual damages, double or treble damages, injunctive or other equitable relief, and attorneys' fees and costs.

<u>**COUNT XVIII**</u>

**MAINE UNFAIR TRADE PRACTICES ACT,**

**5 Me. Rev. Stat. §§ 205, 213, *et seq.***

**(On behalf of Plaintiff Dutill and the Maine Subclass)**

693.    Plaintiff Dutill individually, and on behalf of the Maine Subclass, repeats and realleges all allegations as if fully set forth herein.

694.    T-Mobile is a "person" as defined by 5 Me. Stat. § 206(2).

695.    T-Mobile's conduct as alleged herein related was in the course of "trade and commerce" as defined by 5 Me. Stat. § 206(3).

696.    Plaintiff Dutill and members of the Maine Subclass purchased goods and/or services for personal, family, and/or household purposes.

697.    T-Mobile engaged in unfair and deceptive trade acts and practices in the conduct of trade or commerce, in violation of 5 Me. Rev. Stat. §207, including:

    a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Dutill's and members of the Maine Subclass' PII, which was a direct and proximate cause of the Data Breach;

    b.  Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Dutill's and members of the Maine Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d. Misrepresenting that they would protect the privacy and confidentiality of Plaintiff Dutill's and members of the Maine Subclass' PII, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Dutill's and members of the Maine Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff Dutill's and members of the Maine Subclass' PII; and

g. Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Dutill's and members of the Maine Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

698.   T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

699.   Had T-Mobile disclosed to Plaintiff Dutill and members of the Maine Subclass that its data systems were not secure and, thus, vulnerable to attack, T-Mobile would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. T-Mobile was trusted with sensitive and valuable PII regarding millions of

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*
127

consumers, including Plaintiff Dutill's and the Maine Subclass. T-Mobile accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff Dutill and members of the Maine Subclass acted reasonably in relying on T-Mobile's misrepresentations and omissions, the truth of which they could not have discovered.

700.   As a direct and proximate result of T-Mobile's unfair and deceptive acts and conduct, Plaintiff Dutill and members of the Maine Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss of the value of access to their PII; and the value of identity protection services made necessary by the Breach.

701.   Plaintiff Dutill and members of the Maine Subclass seek all monetary and non-monetary relief allowed by law, including damages or restitution, injunctive and other equitable relief, and attorneys' fees and costs.

## COUNT XIX
### MICHIGAN IDENTITY THEFT PROTECTION ACT,
### Mich. Comp. Laws Ann. §§ 445.72, *et seq.*
### (On behalf of Plaintiff Limberger, Plaintiff Valdez and the Michigan Subclass)

702.   Plaintiff Limberger and Plaintiff Valdez, individually, and on behalf of the Michigan Subclass, repeats and realleges all allegations as if fully set forth herein.

703.   T-Mobile is a business that owns or licenses computerized data that includes PII as defined by Mich. Comp. Laws Ann. § 445.72(1).

704.    Plaintiff Limberger and Plaintiff Valdez's and members of the Michigan Subclass' personal information (for the purpose of this count, "PII"), (e.g., Social Security numbers) includes PII as covered under Mich. Comp. Laws Ann. § 445.72(1).

705.    T-Mobile is required to accurately notify Plaintiff Limberger, Plaintiff Valdez and members of the Michigan Subclass if it discovers a security breach or receives notice of a security breach (where unencrypted and unredacted PII was accessed or acquired by unauthorized persons), without unreasonable delay under Mich. Comp. Laws Ann. § 445.72(1).

706.    Because T-Mobile discovered a security breach and had notice of a security breach (where unencrypted and unredacted PII was accessed or acquired by unauthorized persons), T-Mobile had an obligation to disclose the T-Mobile data breach in a timely and accurate fashion as mandated by Mich. Comp. Laws Ann. § 445.72(4).

707.    By failing to disclose the T-Mobile data breach in a timely and accurate manner, T-Mobile violated Mich. Comp. Laws Ann. § 445.72(4).

708.    As a direct and proximate result of T-Mobile's violations of Mich. Comp. Laws Ann. § 445.72(4), Plaintiff Limberger, Plaintiff Valdez and members of the Michigan Subclass suffered damages, as described above.

709.    Plaintiff Limberger, Plaintiff Valdez and members of the Michigan Subclass seek relief under Mich. Comp. Laws Ann. § 445.72(13), including a civil fine.

## COUNT XX
### MICHIGAN CONSUMER PROTECTION ACT,
### Mich. Comp. Laws Ann. §§ 445.903, *et seq.*
### (On behalf of Plaintiff Limberger, Plaintiff Valdez and the Michigan Subclass)

710.   Plaintiff Limberger and Plaintiff Valdez, individually, and on behalf of the Michigan Subclass, repeats and realleges all allegations as if fully set forth herein.

711.   T-Mobile, Plaintiff Limberger, Plaintiff Valdez, and each member of the Michigan Subclass are "persons" as defined by Mich. Comp. Laws Ann. § 445.903(d).

712.   T-Mobile advertised, offered, or sold goods or services in Michigan and engaged in trade or commerce directly or indirectly affecting the people of Michigan, as defined by Mich. Comp. Laws Ann. § 445.903(g).

713.   T-Mobile engaged in unfair, unconscionable, and deceptive practices in the conduct of trade and commerce, in violation of Mich. Comp. Laws Ann. § 445.903(1), including:

a.   Representing that its goods and services have characteristics, uses, and benefits that they do not have;

b.   Representing that its goods and services are of a particular standard or quality if they are of another;

c.   Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;

d.   Making a representation or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;

e.   Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive matter.

714.   T-Mobile's unfair, unconscionable, and deceptive practices include:

a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Limberger and Plaintiff

Valdez's and members of the Michigan Subclass' PII, which was a direct and proximate cause of the Data Breach;

b. Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Limberger, Plaintiff Valdez and members of the Michigan Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d. Misrepresenting that they would protect the privacy and confidentiality of Plaintiff Limberger and Plaintiff Valdez's and members of the Michigan Subclass' PII, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Limberger and Plaintiff Valdez's and members of the Michigan Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff Limberger and Plaintiff Valdez's and members of the Michigan Subclass' PII; and

g. Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Limberger and Plaintiff Valdez's and members of the Michigan Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

715. T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

716. T-Mobile intended to mislead Plaintiff Limberger, Plaintiff Valdez and members of the Michigan Subclass and induce them to rely on its misrepresentations and omissions.

717. T-Mobile acted intentionally, knowingly, and maliciously to violate Michigan's Consumer Protection Act, and recklessly disregarded Plaintiff Limberger, Plaintiff Valdez and members of the Michigan Subclass' rights.

718. As a direct and proximate result of T-Mobile's unfair, unconscionable, and deceptive practices, Plaintiff Limberger, Plaintiff Valdez and members of the Michigan Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss of the value of access to their PII; and the value of identity protection services made necessary by the Breach.

719. Plaintiff Limberger, Plaintiff Valdez and the Michigan Subclass seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $250, injunctive relief, and any other relief that is just and proper.

**COUNT XXI**

**NEW JERSEY CUSTOMER SECURITY BREACH**

**DISCLOSURE ACT,**

**N.J. Stat. Ann. §§ 56:8-163,** *et seq.*

**(On behalf of Plaintiff Mandal and the New Jersey Subclass)**

720.   Plaintiff Mandal individually, and on behalf of the New Jersey Subclass, repeats and realleges all allegations as if fully set forth herein.

721.   T-Mobile is a business that compiles or maintains computerized records that includes personal information (for the purpose of this count, "PII"), on behalf of another business under N.J. Stat. Ann. § 56:8-163(b).

722.   The PII of Plaintiff Mandal and members of the New Jersey Subclass (including names, addresses, and Social Security numbers) includes PII covered under N.J. Stat. Ann. §§ 56:8-163, et seq.

723.   Under N.J. Stat. Ann. § 56:8-163(b), "[a]ny business . . . that compiles or maintains computerized records that include personal information on behalf of another business or public entity shall notify that business or public entity, who shall notify its New Jersey customers . . . of any breach of security of the computerized records immediately following discovery, if the personal information was, or is reasonably believed to have been, accessed by an unauthorized person."

724.   Because T-Mobile discovered a breach of its security system in which PII was, or is reasonably believed to have been, acquired by an unauthorized person and the PII was not secured, T-Mobile had an obligation to disclose the T-Mobile data breach in a timely and accurate fashion as mandated under N.J. Stat. Ann. §§ 56:8-163, et seq.

725.   By failing to disclose the T-Mobile data breach in a timely and accurate manner, T-Mobile violated N.J. Stat. Ann. § 56:8-163(b).

726.   As a direct and proximate result of T-Mobile's violations of N.J. Stat. Ann. § 56:8-163(b), Plaintiff Mandal and members of the New Jersey Subclass suffered the damages described above.

727.   Plaintiff Mandal and members of the New Jersey Subclass seek relief under N.J. Stat. Ann. § 56:8-19, including treble damages, attorneys' fees and costs, and injunctive relief.

**COUNT XXII**

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

**NEW JERSEY CONSUMER FRAUD ACT,**

**N.J. Stat. Ann. §§ 56:8-1, et seq.**

**(On behalf of Plaintiff Mandal and the New Jersey Subclass)**

728.   Plaintiff Mandal individually, and on behalf of the New Jersey Subclass, repeats and realleges all allegations as if fully set forth herein.

729.   T-Mobile is a "person," as defined by N.J. Stat. Ann. § 56:8-1(d).

730.   T-Mobile sells "merchandise," as defined by N.J. Stat. Ann. § 56:8-1(c) & (e).

731.   The New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-2 prohibits unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

732.   T-Mobile's unconscionable and deceptive practices include:

    a.   Failing to implement and maintain reasonable security and privacy measures to protect The PII of Plaintiff Mandal and members of the New Jersey Subclass, which was a direct and proximate cause of the Data Breach;

    b.   Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

    c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of the PII of Plaintiff Mandal and members of the New Jersey Subclass, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d. Misrepresenting that they would protect the privacy and confidentiality of the PII of Plaintiff Mandal and members of the New Jersey Subclass, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of the PII of Plaintiff Mandal and members of the New Jersey Subclass, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure the PII of Plaintiff Mandal and members of the New Jersey Subclass; and

g. Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of the PII of Plaintiff Mandal and members of the New Jersey Subclass, including duties imposed by the FTC Act, 15 U.S.C. § 45.

733. T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

734. T-Mobile intended to mislead Plaintiff Mandal and members of the New Jersey Subclass and induce them to rely on its misrepresentations and omissions.

735. T-Mobile acted intentionally, knowingly, and maliciously to violate New Jersey's Consumer Fraud Act, and recklessly disregarded the rights of Plaintiff Mandal and members of the New Jersey Subclass. T-Mobile's numerous past data breaches put it on notice that its security and privacy protections were inadequate.

736. As a direct and proximate result of T-Mobile's unconscionable and deceptive practices, Plaintiff Mandal and members of the New Jersey Subclass

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss of the value of access to their PII; and the value of identity protection services made necessary by the Breach.

737.   Plaintiff Mandal and members of the New Jersey Subclass seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs.

## COUNT XXIII
### NEW YORK GENERAL BUSINESS LAW,
### N.Y. Gen. Bus. Law §§ 349, *et seq.*
**(On behalf of Plaintiff Baez, Plaintiff Burka, Plaintiff Hinds, Plaintiff Mills, Plaintiff Resnick, Plaintiff Rodgers, Plaintiff Salcedo, Plaintiff Torres, Plaintiff Vann and the New York Subclass)**

738.   Plaintiff Baez, Plaintiff Burka, Plaintiff Hinds, Plaintiff Mills, Plaintiff Resnick, Plaintiff Rodgers, Plaintiff Salcedo, Plaintiff Torres, and Plaintiff Vann, individually, and on behalf of the New York Subclass, repeats and realleges all allegations as if fully set forth herein.

739.   T-Mobile engaged in deceptive acts or practices in the conduct of its business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, including:

      a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Baez, Plaintiff Burka, Plaintiff Hinds, Plaintiff Mills, Plaintiff Resnick, Plaintiff Rodgers, Plaintiff Salcedo, Plaintiff Torres, and Plaintiff

Vann's and Subclass Members' PII, which was a direct and proximate cause of the Data Breach;

b. Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Baez, Plaintiff Burka, Plaintiff Hinds, Plaintiff Mills, Plaintiff Resnick, Plaintiff Rodgers, Plaintiff Salcedo, Plaintiff Torres, and Plaintiff Vann's and Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d. Misrepresenting that they would protect the privacy and confidentiality of Plaintiff Baez, Plaintiff Burka, Plaintiff Hinds, Plaintiff Mills, Plaintiff Resnick, Plaintiff Rodgers, Plaintiff Salcedo, Plaintiff Torres, and Plaintiff Vann's and Subclass Members' PII, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Baez, Plaintiff Burka, Plaintiff Hinds, Plaintiff Mills, Plaintiff Resnick, Plaintiff Rodgers, Plaintiff Salcedo, Plaintiff Torres, and Plaintiff Vann's and Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff Baez, Plaintiff Burka, Plaintiff Hinds, Plaintiff Mills, Plaintiff Resnick,

Plaintiff Rodgers, Plaintiff Salcedo, Plaintiff Torres, and Plaintiff Vann's and Subclass Members' PII; and

g. Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Baez, Plaintiff Burka, Plaintiff Hinds, Plaintiff Mills, Plaintiff Resnick, Plaintiff Rodgers, Plaintiff Salcedo, Plaintiff Torres, and Plaintiff Vann's and Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

740.   T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

741.   T-Mobile acted intentionally, knowingly, and maliciously to violate New York's General Business Law, and recklessly disregarded Plaintiff Baez, Plaintiff Burka, Plaintiff Hinds, Plaintiff Mills, Plaintiff Resnick, Plaintiff Rodgers, Plaintiff Salcedo, Plaintiff Torres, and Plaintiff Vann's and members of the New York Subclass' rights.

742.   As a direct and proximate result of T-Mobile's deceptive and unlawful acts and practices, Plaintiff Baez, Plaintiff Burka, Plaintiff Hinds, Plaintiff Mills, Plaintiff Resnick, Plaintiff Rodgers, Plaintiff Salcedo, Plaintiff Torres, Plaintiff Vann and the New York Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss of the value of access to their PII; and the value of identity protection services made necessary by the Data Breach.

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

743.   T-Mobile's deceptive and unlawful acts and practices complained of herein affected the public interest and consumers at large, including the many New Yorkers affected by the Data Breach.

744.   The above deceptive and unlawful practices and acts by T-Mobile caused substantial injury to Plaintiff Baez, Plaintiff Burka, Plaintiff Hinds, Plaintiff Mills, Plaintiff Resnick, Plaintiff Rodgers, Plaintiff Salcedo, Plaintiff Torres, Plaintiff Vann and the New York Subclass that they could not reasonably avoid.

745.   Plaintiff Baez, Plaintiff Burka, Plaintiff Hinds, Plaintiff Mills, Plaintiff Resnick, Plaintiff Rodgers, Plaintiff Salcedo, Plaintiff Torres, Plaintiff Vann and the New York Subclass seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $50 (whichever is greater), treble damages, injunctive relief, and attorney's fees and costs.

## COUNT XXIV

## NORTH CAROLINA IDENTITY THEFT PROTECTION ACT, N.C. Gen. Stat. §§ 75-60, et seq.

### (On behalf of Plaintiff Robbins and the North Carolina Subclass)

746.   Plaintiff Robbins individually and on behalf of the North Carolina Subclass, repeats and realleges the above allegations as if fully set forth herein.

747.   T-Mobile is a business that owns or licenses computerized data that includes personal information (for the purpose of this count, "PII"), as defined by N.C. Gen. Stat. § 75-61(1).

748.   Plaintiff Robbins and members of the North Carolina Subclass are "consumers" as defined by N.C. Gen. Stat. § 75-61(2).

749.   T-Mobile is required to accurately notify Plaintiff Robbins and members of the North Carolina Subclass if it discovers a security breach, or receives notice of a security breach (where unencrypted and unredacted PII was accessed or acquired by unauthorized persons), without unreasonable delay under N.C. Gen. Stat. § 75-65.

750.    The PII of Plaintiff Robbins and members of the North Carolina Subclass includes PII as covered under N.C. Gen. Stat. § 75-61(10).

751.    Because T-Mobile discovered a security breach and had notice of a security breach (where unencrypted and unredacted PII was accessed or acquired by unauthorized persons), T-Mobile had an obligation to disclose the T-Mobile data breach in a timely and accurate fashion as mandated by N.C. Gen. Stat. § 75-65.

752.    By failing to disclose the T-Mobile data breach in a timely and accurate manner, T-Mobile violated N.C. Gen. Stat. § 75-65.

753.    A violation of N.C. Gen. Stat. § 75-65 is an unlawful trade practice under N.C. Gen. Stat. Art. 2A § 75-1.1.

754.    As a direct and proximate result of T-Mobile's violations of N.C. Gen. Stat. § 75-65, Plaintiff and North Carolina Subclass Members suffered damages, as described above.

755.    Plaintiff Robbins and members of the North Carolina Subclass seek relief under N.C. Gen. Stat. §§ 75-16 and 16.1, including treble damages and attorney's fees.

## <u>COUNT XXV</u>

### NORTH CAROLINA UNFAIR TRADE PRACTICES ACT, N.C. Gen. Stat. Ann. §§ 75-1.1, et seq.
### (On behalf of Plaintiff Robbins and the North Carolina Subclass)

756.    Plaintiff Robbins individually and on behalf of the North Carolina Subclass, repeats and realleges the above allegations as if fully set forth herein.

757.    T-Mobile advertised, offered, or sold goods or services in North Carolina and engaged in trade or commerce directly or indirectly affecting the people of North Carolina, as defined by N.C. Gen. Stat. Ann. § 75-1.1(b).

758.    T-Mobile engaged in unfair and deceptive acts and practices in or affecting commerce, in violation of N.C. Gen. Stat. Ann. § 75-1.1, including:

a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Robbins' and members of the North Carolina Subclass' PII, which was a direct and proximate cause of the Data Breach;

b.   Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Robbins' and members of the North Carolina Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d.   Misrepresenting that they would protect the privacy and confidentiality of Plaintiff Robbins' and members of the North Carolina Subclass' PII, including by implementing and maintaining reasonable security measures;

e.   Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Robbins' and members of the North Carolina Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff Robbins' and members of the North Carolina Subclass' PII; and

g.   Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Robbins' and

members of the North Carolina Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

759.   T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

760.   T-Mobile intended to mislead Plaintiff Robbins and members of the North Carolina Subclass and induce them to rely on its misrepresentations and omissions.

761.   Had T-Mobile disclosed to Plaintiff Robbins and members of the North Carolina Subclass that its data systems were not secure and, thus, vulnerable to attack, T-Mobile would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law.

762.   T-Mobile was trusted with sensitive and valuable PII regarding millions of consumers, including Plaintiff Robbins and members of the North Carolina Subclass. T-Mobile accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff Robbins and members of the North Carolina Subclass acted reasonably in relying on T-Mobile's misrepresentations and omissions, the truth of which they could not have discovered.

763.   T-Mobile acted intentionally, knowingly, and maliciously to violate North Carolina's Unfair Trade Practices Act, and recklessly disregarded Plaintiff Robbins' and members of the North Carolina Subclass' rights. T-Mobile's numerous past data breaches put it on notice that its security and privacy protections were inadequate.

764.   As a direct and proximate result of T-Mobile's unfair and deceptive acts and practices, Plaintiff Robbins and members of the North Carolina Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including

but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss of the value of access to their PII; and the value of identity protection services made necessary by the Breach.

765.    T-Mobile's conduct as alleged herein was continuous, such that after the first violations of the provisions pled herein, each week that the violations continued constitute separate offenses pursuant to N.C. Gen. Stat. Ann. § 75-8.

766.    Plaintiff Robbins and members of the North Carolina Subclass seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, and attorneys' fees and costs.

**COUNT XXVI**

**OHIO CONSUMER SALES PRACTICES ACT,**

**Ohio Rev. Code §§ 1345.01, *et seq.***

**(On behalf of Plaintiff Layman and the Ohio Subclass)**

767.    Plaintiff Layman individually and on behalf of the Ohio Subclass, repeats and realleges the above allegations as if fully set forth herein.

768.    T-Mobile, Plaintiff Layman and each member of the Ohio Subclass are "persons," as defined by Ohio Rev. Code § 1345.01(B).

769.    T-Mobile was a "supplier" engaged in "consumer transactions," as defined by Ohio Rev. Code §§ 1345.01(A) & (C).

770.    T-Mobile advertised, offered, or sold goods or services in Ohio and engaged in trade or commerce directly or indirectly affecting the people of Ohio.

771.    T-Mobile engaged in unfair and deceptive acts and practices in connection with a consumer transaction, in violation of Ohio Rev. Code § 1345.02, including:

a. Representing that the subject of a transaction had approval, performance characteristics, uses, and benefits that it did not have;

b. Representing that the subject of a transaction were of a particular standard or quality when they were not.

772.   T-Mobile engaged in unconscionable acts and practices in connection with a consumer transaction, in violation of Ohio Rev. Code § 1345.03, including:

a. Knowingly taking advantage of the inability of Plaintiff Layman and the members of the Ohio Subclass to reasonably protect their interest because of their ignorance of the issues discussed herein;

b. Knowing at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction;

c. Requiring the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier;

d. Knowingly making a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment.

773.   T-Mobile's unfair, deceptive, and unconscionable acts and practices include:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Layman's and members of the Ohio Subclass' PII, which was a direct and proximate cause of the Data Breach;

b. Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Layman's and members of the Ohio Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d.  Misrepresenting that they would protect the privacy and confidentiality of Plaintiff Layman's and members of the Ohio Subclass' PII, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff Layman's and members of the Ohio Subclass' PII; and

g.  Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Layman's and members of the Ohio Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

774.  T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

775.  T-Mobile intended to mislead Plaintiff and members of the Ohio Subclass and induce them to rely on its misrepresentations and omissions.

776.  T-Mobile acted intentionally, knowingly, and maliciously to violate Ohio's Consumer Sales Practices Act, and recklessly disregarded Plaintiff Layman's and members of the Ohio Subclass' rights. T-Mobile's numerous past

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*
145

data breaches put it on notice that its security and privacy protections were inadequate.

777.   T-Mobile's unfair, deceptive, and unconscionable acts and practices complained of herein affected the public interest, including the many Ohioans affected by the T-Mobile Data Breach.

778.   As a direct and proximate result of T-Mobile's unfair, deceptive, and unconscionable acts and practices, Plaintiff Layman's and members of the Ohio Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss of the value of access to their PII; and the value of identity protection services made necessary by the Breach.

779.   Plaintiff Layman's and members of the Ohio Subclass seek all monetary and non-monetary relief allowed by law, including declaratory and injunctive relief, the greater of actual and treble damages or statutory damages, attorneys' fees and costs, and any other appropriate relief.

## COUNT XXVII
### OHIO DECEPTIVE TRADE PRACTICES ACT,
### Ohio Rev. Code §§ 4165.01, *et seq.*
### (On behalf of Plaintiff Layman, Plaintiff Rostine, and the Ohio Subclass)

780.   Plaintiff Layman and Plaintiff Rostine, individually and on behalf of the Ohio Subclass, repeats and realleges the above allegations as if fully set forth herein.

781.   T-Mobile, Plaintiff Layman, Plaintiff Rostine, and each member of the Ohio Subclass are a "person," as defined by Ohio Rev. Code § 4165.01(D).

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

782.   T-Mobile advertised, offered, or sold goods or services in Ohio and engaged in trade or commerce directly or indirectly affecting the people of Ohio.

783.   T-Mobile engaged in deceptive trade practices in the course of its business and vocation, in violation of Ohio Rev. Code § 4165.02, including:

   a.   Representing that its goods and services have approval, characteristics, uses, or benefits that they do not have;

   b.   Representing that its goods and services are of a particular standard or quality when they are of another;

   c.   Advertising its goods and services with intent not to sell them as advertise.

784.   T-Mobile's deceptive trade practices include:

   a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Layman and Plaintiff Rostine's and members of the Ohio Subclass' PII, which was a direct and proximate cause of the Data Breach;

   b.   Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

   c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Layman and Plaintiff Rostine's and members of the Ohio Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

   d.   Misrepresenting that they would protect the privacy and confidentiality of Plaintiff Layman and Plaintiff Rostine's and members of the Ohio Subclass' PII, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Layman and Plaintiff Rostine's and members of the Ohio Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff Layman and Plaintiff Rostine's and members of the Ohio Subclass' PII; and

785.   Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Layman and Plaintiff Rostine's and members of the Ohio Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

786.   T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

787.   T-Mobile intended to mislead Plaintiff Layman, Plaintiff Rostine and members of the Ohio Subclass and induce them to rely on its misrepresentations and omissions.

788.   T-Mobile acted intentionally, knowingly, and maliciously to violate Ohio's Deceptive Trade Practices Act, and recklessly disregarded Plaintiff Layman and Plaintiff Rostine's and members of the Ohio Subclass' rights. T-Mobile's numerous past data breaches put it on notice that its security and privacy protections were inadequate.

789.   As a direct and proximate result of T-Mobile's deceptive trade practices, Plaintiff Layman, Plaintiff Rostine and members of the Ohio Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud

and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss of the value of access to their PII; and the value of identity protection services made necessary by the Breach.

790.   Plaintiff Layman and Plaintiff Rostine's and members of the Ohio Subclass seek all monetary and non-monetary relief allowed by law, including injunctive relief, actual damages, attorneys' fees, and any other relief that is just and proper.

**COUNT XXVIII**

**RHODE ISLAND DECEPTIVE TRADE PRACTICES ACT,**

**R.I. Gen. Laws §§ 6-13.1, *et seq.***

**(On behalf of Plaintiff Grover and the Rhode Island Subclass)**

791.   Plaintiff Grover individually and on behalf of the Rhode Island Subclass, repeats and realleges the above allegations as if fully set forth herein.

792.   Plaintiff Grover and members of the Rhode Island Subclass are each a "person," as defined by R.I. Gen. Laws § 6-13.1-1(3).

793.   Plaintiff Grover and members of the Rhode Island Subclass purchased goods and services for personal, family, or household purposes.

794.   T-Mobile advertised, offered, or sold goods or services in Rhode Island and engaged in trade or commerce directly or indirectly affecting the people of Rhode Island, as defined by R.I. Gen. Laws § 6-13.1-1(5).

795.   T-Mobile engaged in unfair and deceptive acts and practices, in violation of R.I. Gen. Laws § 6-13.1-2, including:

a.   Representing that its goods and services have approval, characteristics, uses, and benefits that they do not have (R.I. Gen. Laws § 6-13.1-1(6)(v));

b.   Representing that its goods and services are of a particular standard or quality when they are of another (R.I. Gen. Laws § 6-13.1-1(6)(vii));

c. Advertising goods or services with intent not to sell them as advertised (R.I. Gen. Laws § 6-13.1-1(6)(ix));

d. Engaging in any other conduct that similarly creates a likelihood of confusion or misunderstanding (R.I. Gen. Laws § 6-13.1-1(6)(xii));

e. Engaging in any act or practice that is unfair or deceptive to the consumer (R.I. Gen. Laws § 6-13.1-1(6)(xiii)); and

f. Using other methods, acts, and practices that mislead or deceive members of the public in a material respect (R.I. Gen. Laws § 6-13.1-1(6)(xiv)).

796.   T-Mobile's unfair and deceptive acts include:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Grover's and members of the Rhode Island Subclass' PII, which was a direct and proximate cause of the Data Breach;

b. Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Grover's and members of the Rhode Island Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Rhode Island Identity Theft Protection Act of 2015, R.I. Gen. Laws § 11-49.3-2, which was a direct and proximate cause of the Data Breach;

d. Misrepresenting that they would protect the privacy and confidentiality of Plaintiff Grover's and members of the Rhode

Island Subclass' PII, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Grover's and members of the Rhode Island Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Rhode Island Identity Theft Protection Act of 2015, R.I. Gen. Laws § 11-49.3-2;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and Subclass members' PII; and

g.  Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Rhode Island Identity Theft Protection Act of 2015, R.I. Gen. Laws § 11-49.3-2.

797.   T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

798.   T-Mobile intended to mislead Plaintiff Grover and members of the Rhode Island Subclass and induce them to rely on its misrepresentations and omissions.

799.   T-Mobile acted intentionally, knowingly, and maliciously to violate Rhode Island's Deceptive Trade Practices Act, and recklessly disregarded Plaintiff Grover's and members of the Rhode Island Subclass' rights. T-Mobile's numerous past data breaches put it on notice that its security and privacy protections were inadequate.

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

800.   As a direct and proximate result of T-Mobile's unfair and deceptive acts, Plaintiff Grover and members of the Rhode Island Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss of the value of access to their PII; and the value of identity protection services made necessary by the Breach.

801.   Plaintiff Grover and members of the Rhode Island Subclass seek all monetary and non-monetary relief allowed by law, including, pursuant to R.I. Gen. Laws § 6-13.1-5.2, actual damages or statutory damages of $500 per Subclass Member (whichever is greater), punitive damages, injunctive relief, other equitable relief, and attorneys' fees and costs.

## COUNT XXIX

### DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT, Texas Bus. & Com. Code §§ 17.41, et seq.
### (On behalf of Plaintiff Melton, Plaintiff Williams, and the Texas Subclass)

802.   Plaintiff Melton and Plaintiff Williams, individually, and on behalf of the Texas Subclass, repeats and realleges all allegations if fully set forth herein.

803.   T-Mobile is a "person," as defined by Tex. Bus. & Com. Code § 17.45(3).

804.   Plaintiff Melton, Plaintiff Williams and each member of the Texas Subclass are "consumers," as defined by Tex. Bus. & Com. Code § 17.45(4).

805.   T-Mobile advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code § 17.45(6).

806.   T-Mobile engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code § 17.46(b), including:

    a.   Representing that goods or services have approval, characteristics, uses, or benefits that they do not have;

    b.   Representing that goods or services are of a particular standard, quality or grade, if they are of another; and

    c.   Advertising goods or services with intent not to sell them as advertised;

807.   Failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

808.   T-Mobile's false, misleading, and deceptive acts and practices include:

    a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Melton and Plaintiff Williams' and members of the Texas Subclass' PII, which was a direct and proximate cause of the Data Breach;

    b.   Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

    c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Melton and Plaintiff Williams' and members of the Texas Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Texas's data security statute, Tex. Bus. & Com. Code § 521.052, which was a direct and proximate cause of the Data Breach;

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

153

d.  Misrepresenting that they would protect the privacy and confidentiality of Plaintiff Melton and Plaintiff Williams' and members of the Texas Subclass' PII, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Melton and Plaintiff Williams' and members of the Texas Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Texas's data security statute, Tex. Bus. & Com. Code § 521.052;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff Melton and Plaintiff Williams' and members of the Texas Subclass' PII; and

g.  Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Melton and Plaintiff Williams' and members of the Texas Subclass' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Texas's data security statute, Tex. Bus. & Com. Code § 521.052.

809.  T-Mobile intended to mislead Plaintiff Melton, Plaintiff Williams and members of the Texas Subclass and induce them to rely on its misrepresentations and omissions.

810.  T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

811.  Had T-Mobile disclosed to Plaintiff Melton, Plaintiff Williams and members of the Texas Subclass that its data systems were not secure and, thus,

vulnerable to attack, T-Mobile would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. T-Mobile was trusted with sensitive and valuable PII regarding millions of consumers, including Plaintiff Melton, Plaintiff Williams and the Texas Subclass. T-Mobile accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff Melton, Plaintiff Williams and members of the Texas Subclass acted reasonably in relying on T-Mobile's misrepresentations and omissions, the truth of which they could not have discovered.

812.    T-Mobile had a duty to disclose the above facts due to the circumstances of this case, the sensitivity and extensivity of the PII in its possession, and the generally accepted professional standards. Such a duty is implied by law due to the nature of the relationship between consumers, including Plaintiff Melton, Plaintiff Williams and the Texas Subclass, and T-Mobile because consumers are unable to fully protect their interests regarding their data, and placed trust and confidence in T-Mobile. T-Mobile's duty to disclose also arose from its:

a.  Possession of exclusive knowledge regarding the security of the data in its systems;

b.  Active concealment of the state of its security; and/or

c.  Incomplete representations about the security and integrity of its computer and data systems, and its prior data breaches, while purposefully withholding material facts from Plaintiff Melton, Plaintiff Williams and the Texas Subclass that contradicted these representations.

813.    T-Mobile engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3). T-Mobile engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

814.   Consumers, including Plaintiff Melton, Plaintiff Williams and members of the Texas Subclass, lacked knowledge about deficiencies in T-Mobile's data security because this information was known exclusively by T-Mobile. Consumers also lacked the ability, experience, or capacity to secure the PII in T-Mobile's possession or to fully protect their interests regarding their data. Plaintiff Melton, Plaintiff Williams and members of the Texas Subclass lack expertise in information security matters and do not have access to T-Mobile's systems to evaluate its security controls. T-Mobile took advantage of its special skill and access to PII to hide its inability to protect the security and confidentiality of Plaintiff Melton and Plaintiff Williams' and members of the Texas Subclass' PII.

815.   T-Mobile intended to take advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree, with reckless disregard of the unfairness that would result. The unfairness resulting from T-Mobile's conduct is glaringly noticeable, flagrant, complete, and unmitigated. The T-Mobile data breach, which resulted from T-Mobile's unconscionable business acts and practices, exposed Plaintiff Melton, Plaintiff Williams and the members of the Texas Subclass to a wholly unwarranted risk to the safety of their PII and the security of their identity or credit and worked a substantial hardship on a significant and unprecedented number of consumers. Plaintiff Melton, Plaintiff Williams and members of the Texas Subclass cannot mitigate this unfairness because they cannot undo the Data Breach.

816.   T-Mobile acted intentionally, knowingly, and maliciously to violate Texas's Deceptive Trade Practices-Consumer Protection Act, and recklessly disregarded Plaintiff Melton and Plaintiff Williams' and members of the Texas Subclass' rights.

817.   As a direct and proximate result of T-Mobile's unconscionable and deceptive acts or practices, Plaintiff Melton, Plaintiff Williams and members of the Texas Subclass have suffered and will continue to suffer injury, ascertainable

losses of money or property, non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss of the value of access to their PII; and the value of identity protection services made necessary by the Breach. T-Mobile's unconscionable and deceptive acts or practices were a producing cause of Plaintiff Melton, Plaintiff Williams' and members of the Texas Subclass' injuries, ascertainable losses, economic damages, and non-economic damages, including their mental anguish.

818. T-Mobile's violations present a continuing risk to Plaintiff Melton, Plaintiff Williams and members of the Texas Subclass as well as to the public.

819. Plaintiff Melton, Plaintiff Williams and the Texas Subclass seek all monetary and non-monetary relief allowed by law, including economic damages; damages for mental anguish; treble damages for each act committed intentionally or knowingly; court costs; reasonably and necessary attorneys' fees; injunctive relief; and any other relief which the court deems proper

## COUNT XXX

### DECLARATORY AND INJUNCTIVE RELIEF

### (On behalf of the Nationwide Class, or alternatively, the State Subclasses)

820. Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

821. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the statutes described in this Complaint.

822. An actual controversy has arisen in the wake of the Data Breach regarding T-Mobile's present and prospective common law and statutory duties to reasonably safeguard its customers' sensitive personal information and whether T-

Mobile is currently maintaining data security measures adequate to protect Plaintiffs and Class Members from further data breaches. Plaintiffs allege that T-Mobile's data security practices remain inadequate.

823.    Plaintiffs and Class Members continue to suffer injury as a result of the compromise of their sensitive personal information and remain at imminent risk that further compromises of their personal information will occur in the future.

824.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that T-Mobile continues to owe a legal duty to secure consumers' sensitive personal information; to timely notify consumers of any data breach; and to establish and implement data security measures that are adequate to secure customers' sensitive personal information.

825.    The court also should issue corresponding prospective injunctive relief requiring T-Mobile to employ adequate security protocols consistent with law and industry standards to protect consumers' sensitive personal information.

826.    If an injunction is not issued, Plaintiffs and Class Members will suffer irreparable injury, for which they lack an adequate legal remedy. The threat of another data breach is real, immediate, and substantial. If another breach at T-Mobile occurs (which has already happened), Plaintiffs and Class Members will not have an adequate remedy at law, because not all of the resulting injuries are readily quantified, and they will be forced to bring multiple lawsuits to rectify the same conduct.

827.    The hardship to Plaintiffs and Class Members if an injunction does not issue greatly exceeds the hardship to T-Mobile if an injunction is issued. If another data breach occurs at T-Mobile, Plaintiffs and Class Members will likely be subjected to substantial identify theft and other damages. On the other hand, the cost to T-Mobile of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and T-Mobile has a pre-existing legal obligation to employ such measures.

CLASS ACTION COMPLAINT
*Shoemak et al v. T-Mobile US, Inc. et al*

828.   Issuance of the requested injunction will serve the public interest by preventing another data breach at T-Mobile, thus eliminating the additional injuries that would result to Plaintiffs and the millions of consumers whose confidential information would be further compromised.

## **RELIEF REQUESTED**

Plaintiffs, on behalf of all others similarly situated, request that the Court enter judgment against T-Mobile including the following:

A.   Determining that this matter may proceed as a class action and certifying the Classes asserted herein;

B.   Appointing Plaintiffs as representative of the applicable Classes and appointing Plaintiffs' counsel as Class Counsel;

C.   An award to Plaintiffs and the Classes of compensatory, consequential, statutory, restitutionary, nominal, and treble damages as set forth above;

D.   Injunctive relief as described herein;

E.   Entering a declaratory judgment stating that T-Mobile owes a legal duty to secure consumers' sensitive personal information, to timely notify consumers of any data breach, and to establish and implement data security measures that are adequate to secure customers' sensitive personal information;

F.   An award of attorneys' fees, costs, and expenses, as provided by law or equity;

G.   An award of pre-judgment and post-judgment interest, as provided by law or equity; and

H.   Such other relief as the Court may allow.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury for all issues so triable.

Dated: March 8, 2023

/s/ Alexis M. Wood
Ronald A. Marron (175650)
Alexis M. Wood (270200)
Kas L. Gallucci (288709)
**LAW OFFICES OF RONALD A. MARRON**
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006
Fax: (619) 564-6665
ron@consumersadvocates.com
alexis@consumersadvocates.com
kas@consumersadvocates.com

Margaret MacLean (*pro hac forthcoming*)
Christian Levis (*pro hac forthcoming*)
Amanda Fiorilla (*pro hac forthcoming*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone:   (914) 997-0500
Facsimile:   (914) 997-0035
mmaclean@lowey.com
clevis@lowey.com
afiorilla@lowey.com

Anthony M. Christina (*pro hac forthcoming*)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone:   (215) 399-4770
Facsimile:   (914) 997-0035
achristian@lowey.com

Ian W. Sloss (*pro hac forthcoming*)
Zachary Rynar (*pro hac forthcoming*)
Brett Burgs (*pro hac forthcoming*)
**SILVER GOLUB & TEITELL LLP**
One Landmark Square
Floor 15
Stamford, Connecticut 06901
Telephone:   (203) 325-4491
Facsimile:   (203) 325-3769
isloss@sgtlaw.com
zrynar@sgtlaw.com
bburgs@sglaw.com

*Attorneys for Plaintiffs and the Proposed Classes*